**Jean HART as Administratrix of the Estate of Levi Hart, Plaintiff, Appellee,**

**v.**

**Richard W. BOURQUE, Jr., et al., Defendants, Appellants.**

No. 85–1629.

United States Court of Appeals, First Circuit.

Argued Jan. 6, 1986.

Decided Aug. 12, 1986.

Steven P. Perlmutter, Asst. Corp. Counsel, City of Boston Law Dept., with whom Harrison & Maguire, P.C., Boston, Mass., was on brief, for defendants, appellants.

Ellen K. Wade, with whom Henry F. Owens, III, and Owens & Associates, Boston, Mass., were on brief, for plaintiff, appellee.

Before BREYER, Circuit Judge, ALDRICH and ROSENN,* Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This is defendants' appeal from an allowance of counsel fees to plaintiff following the settlement (except for the amount of fees) of a Title 42 U.S.C. § 1983 suit, with pendent counts, 608 F.Supp. 1091. Both sides describe it as a *cause celebre* on account of the incident out of which it arose. Because of the fee claims advanced, and the controversies engaged in by both sides, we, fearing it might become a *cause celebre* for another, and improper reason, postponed to our summer lull the detailed consideration that seemed called for.

* Of the Third Circuit, sitting by designation.

On July 15, 1980, Levi Hart, a 14-year-old black youth, was caught up with by Boston Police Officer Richard W. Bourque, Jr., while trying to escape arrest. In the scuffle Hart's skull was cracked and he was shot by Bourque's revolver. Negroid hair was found on the butt of the revolver. Hart died without regaining consciousness. An inquest judge found "ample cause to believe" the death to have been due to illegal conduct by Bourque.

The police account was considerably different, but offered no explanation for the hair. Ultimately, both state and federal grand juries refused to indict. In the meantime this suit followed shortly after the inquest, plaintiff, Jean Hart, his mother, suing as Levi Hart's administratrix. Named defendants in addition to Bourque and the City of Boston were Kevin H. White, its Mayor, Joseph Jordan, its Police Commissioner, and Newman Flanagan, the Suffolk County District Attorney, all in their personal and official capacities. On September 12, 1983 the suit was settled prior to trial, for $167,500, dismissing with prejudice against all defendants, but reserving attorneys' fees and expenses, to be determined by the court if the parties should not agree. Agreement proving impossible, the matter was submitted to the court, and its findings being unacceptable to defendants, this appeal followed.

The first question is the scope of the fee obligation. The settlement agreement, which stated that no defendant conceded liability, released and discharged all defendants in every respect, "except that Jean Hart retains her right to attorneys' fees from the City of Boston." A controversy developed as to what was to be included. Defendants contended that plaintiff had not "prevailed" against the individual defendants; hence, not only should they not be accountable for fees, but, in measuring the fee due from the City, there should be excluded any separate services attributable only to claims against the individual defendants. For this was cited *Hensley v. Eckerhart*, 461 U.S. 424, 103

S.Ct. 1933, 76 L.Ed.2d 40 (1983). The court cut this short by holding that plaintiff "prevailed" against all defendants. This seems somewhat of a heavy ax. Witness, particularly, the District Attorney, against whom no claim can be imagined. *See Imbler v. Pachtman,* 424 U.S. 409, 424–31, 96 S.Ct. 984, 992–95, 47 L.Ed.2d 128 (1976). At the same time, the result seems a fair interpretation of the scope intended. On the other hand, the court's entering a final order charging all the individual defendants personally directly violated the release agreement. The court's failure to correct this is unfathomable, and resulted in collection efforts directed against them. Equally unaccountable is the fact that the fee order was directed against the individual defendants only, omitting the City altogether, except in a later order with respect to interest.

We attach no consequences to these errors, which can be corrected in due course, and we shall hereafter refer to the defendants in the singular. But while we accept the court's including all services in the fee, it does enter into the overall picture. Included in plaintiff's asserted justifications for the large number of hours claimed are "the complicated legal issues associated with proving supervisory and municipal liability for federal civil rights claims, the number of different causes of action, and the number of separate defendants." The court accepted this, saying it was a "particularly complex case." True, supervisory and municipal liability do raise issues. However, in its characterization the court failed to consider that much of the complexity was unnecessary, and of plaintiff's own making. Even in 7 causes of action, 64 paragraphs and 28 pages, we must wonder what claims there were against the mayor personally, or the district attorney, and, correspondingly, how fees were to be increased because of the "undesirability of taking a case against influential public officials." And, again, we wonder how plaintiff could have standing to seek an injunction against Officer Bourque's remaining on the force, a claim later abandoned, but significantly charged for.

To turn to the merits, on December 6, 1983 plaintiff filed a motion for attorneys' fees: for lead counsel, Mr. Owens, 121.73 hours, at $150 per hour; six associates, 792.92 hours, at $80 per hour; five law students, 890 hours, at $30 per hour; a total of $108,393 plus "an appropriate multiplier," subsequently specified to be 50 percent, plus expenses of $12,000. Thereafter, in response to defendant's motion for a breakdown, plaintiff submitted detailed affidavits. Following extensive briefing, the court, on April 19, 1984, sought to discuss settlement, but this failed, assertedly, and not contradicted, because plaintiff refused to move. A year later, on May 3, 1985, the court filed a memorandum and order awarding fees of $43,478, plus a 20 percent multiplier, a total of $50,974, plus $7,398 for expenses, "plus interest" (to be considered later). In its detailed recital it reduced counsels' hours from 910.61 to 610.83; reduced the hourly charges claimed, and rejected charges for law students altogether.

Because, on a preliminary look at the record, even 610 hours constitutes one-third of a year's billing time for one lawyer; and, from the standpoint of preparation, all possible witnesses had testified in over 800 pages at the inquest, with, also, two grand jury proceedings with largely available transcripts, and the case was settled without trial, we suspected exaggeration, and felt this appeal required particular scrutiny. We especially noted plaintiff's still maintained claim that her original "fee application reflected attention to detail and the exercise of sound billing judgment," and indicated "counsel's restraint," and "self-imposed economies," and "obvious attempts to limit claims." The called-for careful review confirmed our initial suspicions.

■ As we have said, there were seven lawyers: Mr. Owens and, from time to time, six associates. The court's approach was to:

divide the itemized time into separately compensable categories: (1) court appearances and preparation therefor; (2)

review and drafting of pleadings and memoranda, and depositions and preparation therefor; (3) conferences and substantive phone calls; (4) legal research; and (5) administrative and clerical tasks. The court finds that the following respective number of hours were reasonably expended by members of the defense (sic) team:

(A) Henry F. Owens, III
 1) 12.01 hours
 2) 52.5 hours
 3) 41.38 hours
 4) 10.32 hours
 5) zero hours

for a total of 116.21 hours.

Stopping there, Mr. Owens's submission contained 58 items, totalling 121.71 hours. It is not apparent which 5.5 hours the court rejected, but we note that under item (1) it allowed 4 hours less than Mr. Owens claimed. This would correspond with two court hearings the defendant indicated he did not attend. Mr. Owens in fact made no claim for legal research (4). Plaintiff says that the 10.32 hours the court allowed for legal research could relate to "strategy discussions" and "conferences with law students," and we can accept that, there being nothing else. However, 52.5 hours for reviewing pleadings and memoranda leaves us at a total loss for identification. Other findings leave us with similar difficulties.

With respect to plaintiff's claim that her fee application reflects "sound billing judgment," we turn to Ms. Althea Lloyd, as to whom the court found as follows.
 1) 7 hours
 2) 118 hours
 3) 69.5 hours
 4) 59 hours
 5) 1.25 hours
 Total—254.75 hours

Ms. Lloyd's list contains 317 items, totalling 431.87 hours. For "soundness" it includes such matters as 7 hours for proofreading, a secretarial job; (other lawyers charged even more hours for proofreading); hand delivery of papers and mailing packages, in one instance 1.2 hours ($96);

arranging with travel agency for flight tickets (to take a deposition) 2 hours ($160). As another spot example, Ms. Lloyd charged 7 hours for a "strategy discussion" with Mr. Owens and co-counsel Wade. Apart from the fact that this flags an extraordinary discussion, the other participants each charged .5 hours. Again, on October 5 and 7, 1982 Ms. Lloyd charged for time spent in federal court to read grand jury minutes although the district court did not order these minutes until December 1, 1982.

It is true that the court substantially cut Ms. Lloyd's total time, but it did so in a way that adds to our identification problem. Thus, the 59 hours for "legal research," item (4), we cannot reach from any entries, even by including, along with meetings with students, 5 hours charged for arranging with a professor and giving a lecture at Harvard Law School, which the court expressly excluded.

These two examples illustrate our general conclusion. The record as a whole does not support the court's subsidiary findings and hence we cannot affirm its ultimate ones.

■ We pass to plaintiff's justifications. First, that the court used the "lodestar" method. Well and good, but the first question relates to what were the reasonable hours, and this does not help us in that ascertainment. We have already noted plaintiff's claims of "counsel's restraint" and "self-imposed economies." The opposite was the fact. In addition, the turnover among Mr. Owens's associates, or, at least, transfers of duties, was highly extravagant from the standpoint of time. In the first place, backgrounds of familiarity would be lost. This inefficiency would be unobservable as it affected particular jobs, but it even resulted in specific charges. Thus, when one new attorney early on had to write a short review of the status of the case, she charged 5.75 hours. A later replacement charged for "reviewing files," 10.5 hours. Ultimately, another replacement charged 23 hours for reviewing files. At $80 an hour, that alone would be $1,840.

This was an office defect, not chargeable to defendants.

 As another matter, whether it was staffing problems, a lack of coordination, or what, we are struck, in reviewing the record, of 165 hours charged for telephone calls. This would be four, eight-hour day weeks by a lawyer's time. Plaintiff asserts that the telephone "saves" time. Here the inference is almost inescapable that time was being spent without regard to productivity.

Further duplication of effort is observable by dual attendance at motion hearings, no matter how inconsequential. This may have been good experience for the onlooker; it did not advance the case. Plaintiff forgets, a not uncommon practice these days, our caution in *King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir.1977), that the time for two or three lawyers in a courtroom or conference, when one would do, "may obviously be discounted."

Under these circumstances the real test cannot be the number of hours logged, but what was done. The transcript-demonstrated work emphasized countless interrogatories, motions for production; and other matters of a low order of skill; strategy sessions, conferences, meetings with law students, telephones. We do not believe Mr. Owens was one to waste his own time, but there seems to have been no restrictions on his associates.

In our leading case of *Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980), in which the writer of this opinion was the trial judge, and has a strong memory, this court allowed 200 hours for a case that went to verdict, after a hotly-contested trial. The instant case was more complicated because of sought municipal liability, but it did not involve heavy trial work. On its face, 610 hours was far too much.

We do accept the court's determination of hourly rates, which were considerably below the amounts claimed, but for the rest we must start afresh. Since there was no trial, we are in a somewhat better position than an appellate court normally is in, and we have laboriously reviewed plaintiff's ultimate 50–page listing. We have also applied the court's specified eliminations of "unnecessary time: that devoted to continuing legal education; that spent travelling; that spent on arrangements for lectures or publications about the case; or that spent doing extensive legal research when the parties were on the verge of reaching a settlement." Parenthetically, our first attention to this exclusion makes even more puzzling some of the hours included in the court's findings. Our result, even when giving many matters the benefit of the doubt, and with duplication of effort still seeming very apparent, is that we come up with $33,000 as a maximum. This involves accepting the court's figure for Mr. Owens, in view of his accomplishment, but effects substantial cuts elsewhere. We were loath to have to take time for such a review, but we felt obliged to under the unusual circumstances of this case.

 On top of the basic fee, the court awarded a general twenty percent multiplier. As we observed recently, *Conservation Law Foundation v. Secretary of Interior*, 790 F.2d 965, 970–71 (1st Cir.1986), there can always be found reason for making exceptions, and the presumption should be the other way. The court found Mr. Owens lost other profitable business. For this finding there was nothing supplied but a conclusory statement of Mr. Owens, attributing it to the fact that his "firm" had spent 1,790.65 hours on the case. We note the coincidence that this is 100 hours less (a mistake in arithmetic?) than the total hours charged, which included 890 hours for law students. This is a rather expandable "firm." We further note that of even the lawyers' time, Mr. Owens claimed only 121 hours, or thirteen percent. This bare record is insufficient to justify a multiplier on the ground of lost legal business.

 We are also unwilling to accept an increase in fees because of unidentified "death threats." It is not "incredible" that counsel's conduct may have provoked them. There are countless cases alleging police brutality with no such consequences.

This would be a poor precedent for increasing a defendant's responsibility. Without pursuing this matter, with one exception the court's other reasons for allowing a multiplier are interdicted by the recent decision of *Pennsylvania, et al. v. Delaware Valley Citizens' Council for Clean Air,* — U.S. —, —, 106 S.Ct. 3088, 3097–3100, 92 L.Ed.2d 439 (1986) and we need not pursue them.

■ The one remaining reason is that the fee was contingent on success. *Delaware Valley* expressly left that matter open for consideration next term. It is not apparent what proportion of its twenty percent the court attributed to this factor, but, obviously, only a portion. This case should be disposed of. With the law uncertain, the amount uncertain, and our unfavorable reaction to plaintiff's making and insisting upon such extraordinary fee claims, we reject a multiplier altogether.

■ This brings us to the subject of prejudgment interest that the court ultimately added to the fee award. The fee comes only in the federal claim, and the statute excludes prejudgment interest in general. 42 U.S.C. § 1961. If there should be some special equitable basis, we cannot accept the court's reasoning. It is true that we have spoken of awarding interest when a defendant has obstinately delayed payment. *Furtado v. Bishop,* 604 F.2d 80, 97 (1st Cir.1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672. In accord therewith the court here referred to "an unwarranted delay in payment," and rejected defendant's objection that the delay was due to "plaintiff's excessive fee application" "because the fees requested for the most part were reasonable." Apparently it had forgotten two things: first, that it had reduced plaintiff's claim from $164,000 to $50,000; second, that there was, indeed, a 13-month delay in payment, but this was because the court required that time to make the reduction in plaintiff's exceptional figures—certainly not defendant's fault. Finally, the court referred to the fact that it had "attempted, unsuccessfully, to settle the fee award." Here, again, it apparently forgot that it was plaintiff who refused to make any compromise. The delay in payment is chargeable to plaintiff, not defendant. We vacate the award of prejudgment interest, and plaintiff's fee for pursuing it.

The judgment of the district court is reversed and the case remanded for further proceedings consistent herewith (judgment to be against the City of Boston only). No costs, or attorneys' fees, on this appeal. No interest prior to the date of the new judgment.