**CHESTNUT HILL GULF, INC., et al., Plaintiffs,**

v.

**CUMBERLAND FARMS, INC. and Chevron U.S.A., Inc., Defendants.**

**Civ. A. No. 86–3519.**

United States District Court,
D. Massachusetts.

Oct. 24, 1990.

Bob Cultice and Carl K. King, Goldstein & Manello, Boston, Mass., for plaintiffs.

Mark G. Howard, Law Dept., Cumberland Farms, Inc., Canton, Mass., for Cumberland Farms, Inc.

. Alan Van Gestel, Goodwin, Procter & Hoar; Ann Palmieri, Charles Donelan, Day, Berry & Howard, Boston, Mass.; Richard M. Reynolds, Day, Berry & Howard, Hartford, Conn.; and John Williams, Collier, Shannon & Scott, Washington, D.C., for Chevron, U.S.A.

## MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

McNAUGHT, District Judge.

This matter is before the Court on plaintiffs' motion for attorneys' fees, expert witness fees, and costs pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2805(d)(1). In support of the motion, plaintiffs have submitted computerized records itemizing the time spent and services rendered by their attorneys and legal assistants. Defendants have opposed plaintiffs' motion, and supporting memoranda have been filed by both parties.

Plaintiffs were sixteen service station dealers who charged Chevron and Cumberland Farms with having terminated or nonrenewed their franchises in bad faith. On February 21, 1989, after a nineteen-day trial, the jury returned a verdict for plaintiffs as against Cumberland Farms. Plaintiffs did not prevail against Chevron where its decision to withdraw from the market was found to be in the normal course of business and in good faith.

Damages were awarded in the amount of $653,682.00. One dollar was awarded to Al

Stander's Gulf Service, J.M. McMullen, Russell Killion, Nicholas Prizio, James Lahey, Richard Silva, and Bolton Chevron. Five plaintiffs received zero damages. They are Steve Spinelli, Francis A. Roberts, Jr., Mystic Gulf Service, and O.F. Welker, Inc. Chestnut Hill Gulf, Inc. received the largest sum—$490,000. Fifty-three thousand dollars was awarded to Thomas Gilbraith; $98,000 was awarded to David Hills; Yassin Gulf received $6,375.00, and Bob's Gulf Service received $6,300.00.

Plaintiffs also received significant equitable relief in the nature of injunctive relief and a rent freeze order mandated by this Court. More importantly, plaintiffs were allowed to remain in their respective franchises during the pendency of the action and thereafter were to be offered nondiscriminatory franchise agreements for a three-year period.

■ Defendants' initial objection to the motion is that those plaintiffs who received zero damages, or nominal damages of one dollar, are not prevailing parties and are not entitled to attorneys' fees. To prevail as a party, plaintiffs must establish that they were successful on a significant issue that achieved some of the benefits sought. *Texas State Teachers Assoc. v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Defendants analogize the definition of prevailing party in PMPA cases to that of civil rights cases. We agree. Employing that analysis, notwithstanding the paucity of damages awarded to some of the plaintiffs, the equitable relief granted (coupled with the actual damages awarded certain plaintiffs) compels the conclusion that all plaintiffs are prevailing parties. See *Ketterle v. B.P. Oil, Inc.*, 909 F.2d 425 (11th Cir.1990) (plaintiffs held to be prevailing parties where injunctive relief removed threat of termination allowing them to remain in franchise until defendant withdrew its termination). See also *Lippo v. Mobil Oil Corp.*, 776 F.2d 706 (7th Cir.1985); *Lyons v. Mobil Oil Corp.*, 554 F.Supp. 199 (D.Conn.1982).

■ As an additional preliminary issue, defendants argue that because they tendered an offer of $700,000.00 to plaintiffs before trial, most of the plaintiffs are not entitled to attorneys' fees incurred after the November 30, 1988 offer. Defendants predicate this argument on Rule 68 of the Federal Rules of Civil Procedure which provides that if a party rejects a pretrial settlement offer, and "the judgment finally obtained ... is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Defendants insist that their $700,000.00 pretrial offer equalled more than the $653,-682.00 in total damages received by plaintiffs, and argue therefore, that any fees awarded must be reduced accordingly.

There is no doubt that Rule 68 was promulgated to encourage settlements and to avoid litigation. *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); *Crossman v. Marcoccio*, 806 F.2d 329 (1st Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). Financial compensation, however, is not the "be all and end all". Plaintiffs here received very real benefits in the form of being allowed to retain their franchises for at least a three-year period. Their belief that Cumberland Farms had acted improperly was vindicated by the jury's finding of bad faith on Cumberland Farms's part when it terminated or failed to renew the franchises in question. Two of the contractual provisions were changed as a result of the litigation. Those successes suffice to demonstrate that plaintiffs received more than just the actual damages awarded. Rule 68 was not intended to preclude parties from having their day in court where more could be gained from litigating a matter than from accepting a settlement. The fact that an offer of $700,000.00 was made before trial, therefore, does not bar this motion for attorneys' fees and costs where I conclude that plaintiffs received more as a result of the litigation than that which was offered by way of a pretrial settlement.

■ Plaintiffs initially sought $880,102.00 in attorneys' fees, $56,684.03 in expenses, and $38,356.46 in expert witness fees. Also sought was an upward adjustment of the lodestar of a 1.5 multiplier, or

the use of current hourly rates (rather than historical rates), due to what plaintiffs characterize as the "exceptional success" of the action. Were this Court to grant the request to use current hourly rates, plaintiffs would receive $973,191.00 in attorneys' fees. If this Court were to award additionally the requested upward adjustment of the lodestar, plaintiffs would be granted the sum of $1,269,000.00.

The breakdown of the requested fees for attorneys and legal assistants is as follows:

| Attorney | Hours | Rates | Total |
|---|---|---|---|
| Stephen M. Honig | 344.5 | 205–250 | $ 78,405.00 |
| Carl K. King | 891.2 | 205–230 | $199,638.00 |
| Martin S. Allen | 12.5 | 255 | $ 3,187.50 |
| Robert D. Cultice | 1488.2 | 155–200 | $256,698.00 |
| Gayle M. Merling | 32 | 155 | $ 4,960.00 |
| Warren I. Green | 65.4 | 140 | $ 9,156.00 |
| Brooks S. Thayer | 166.5 | 100 | $ 16,650.00 |
| David Wisen | 107.9 | 100 | $ 10,790.00 |
| Thomas P. LaFrance | 862.1 | 100–110 | $ 87,228.00 |
| Steven D. Fisher | 4.5 | 90 | $ 405.00 |
| Caroline M. O'Brien | 233.7 | 70 | $ 16,359.00 |
| Alana Shephard | 582.7 | 55–60 | $ 32,515.00 |
| Dan W. Pugh | 114.4 | 50 | $ 5,720.00 |
| Kathleen T. Hagerty | 820 | 50–70 | $ 54,813.00 |
| Susan W. Sullivan | 73.1 | 50–70 | $ 3,723.00 |
| Marc C. Cail | 10.8 | 60 | $ 648.00 |
| Alice Whitacre | 364.9 | 30 | $ 10,947.00 |
| Rebecca F. Martin | 172.8 | 30 | $ 5,184.00 |
| Christine King | 26.9 | 30 | $ 807.00 |
| Karen L. Miller | 29.5 | 45 | $ 1,327.50 |
| Louise B. Quinlan | 5.4 | 50 | $ 270.00 |

Total Hours: 6,409
Total Amount: $799,431.00

At the outset of the hearing on this motion, Attorney Robert Cultice filed an update on the fee petition. The additional fees sought include the following:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Stephen M. Honig | 4 | 250 | $ 1,000 |
| Carl K. King | 79.7 | 230 | $18,331 |
| Warren I. Green | .3 | 165 | $ 49.50 |
| Louis J. Scerra | 127.2 | 125 | $15,900 |
| Robert D. Cultice | 63.9 | 200 | $12,780 |
| Wendy Champagne | 44.5 | 70 | $ 3,115 |
| Kathleen M. Hagerty | 55.4 | 70 | $ 3,878 |
| Susan W. Sullivan | .6 | 70 | $ 42.00 |
| K. Rosin | .7 | 50 | $ 35.00 |

Total Hours: 376.3
Total Amount: $55,130.50

A supplemental affidavit filed by Attorney Carl King further requested the following fees for preparation of plaintiffs' petition:

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| Carl K. King | 36 | 230 | $8,280 |
| Robert D. Cultice | 19 | 175–200 | $3,582.50 |
| Louis J. Scerra | 59 | 125 | $7,375 |
| Thomas P. LaFrance | 41.2 | 100–110 | $4,483.00 |
| Wendy Champagne | 26 | 70 | $1,820 |

Total Hours: 181.2
Total Amount: $25,540.50

The Supreme Court has suggested that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate", called the lodestar approach. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In determining the appropriate lodestar figure, this Court is guided by twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). Those factors are: 1) time and labor required; 2) novelty and difficulty of the questions; 3) skill requisite to perform the legal services properly; 4) preclusion of employment as a result of accepting the case; 5) customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed; 8) amount involved and results obtained; 9) experience, reputation, and ability of the attorneys; 10) undesirability of the case; 11) nature and length of the relationship with the client; and 12) awards in similar cases. *Id.* at 717–719.

This was a lengthy and complicated case. The trial lasted nineteen days. All the lawyers involved were excellent as befits their experience and reputation. There was a great deal of time and labor required, and the results obtained for plaintiffs were significant. Nothing about the case was undesirable.

What constitutes a reasonable fee in this case? Certainly not what plaintiffs are asking. I decline to adjust upwardly the not-yet determined lodestar figure. I further decline to apply the current hourly rates. Instead, I employ the historical rates; that is, those rates actually charged at the time a particular service was rendered.

In reviewing the contemporaneous time records submitted with plaintiffs' motion, it is clear that a great deal of time, and hence, money, was spent in office and telephone conferences among the attorneys. It is impossible to discern exactly how much time was spent in such activities, however, because many of the entries do not delineate the amount of time spent on a particular task. Most of the entries reflect myriad activities. For example, one entry provides that an attorney spent 5.50 hours on "drafting and various telephone conferences". There is no question that some of the time spent was duplicative and unnecessary. Multiple conferences among attorneys is simply not reasonable. The same is true of innumerable telephone conferences. See *Hart v. Bourque,* 798 F.2d 519 (1st Cir.1986). Despite the fact that defendants often had a back table clogged with attorneys, I question the propriety of charging for two partners attending trial every day (along with additional legal personnel), when only one attorney conducted direct or cross-examination. The fee is reduced to account for duplication of effort during trial and for the preparation thereof as well.

In an effort to assess fairly what is a reasonable fee, and recognizing the importance of applying the twelve guiding factors of the *Georgia Highway Express* case, I reach the conclusion that the fee petition should be reduced by three hundred thousand dollars. Attorneys' fees are awarded in the amount of $580,102.00.

■ Plaintiffs also seek reimbursement for costs in the amount of $66,809.37. De-

fendants correctly state, however, that section 2805(d)(1) of the PMPA does not reference costs. I agree that the analogy to the civil rights cases just does not extend that far. I am, therefore, disallowing this particular request. Plaintiffs may, of course, submit a bill of costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. One final fee request has been submitted. That is, plaintiffs seek reimbursement for $38,356.46 in expert witness fees. The jury discounted a large portion of the expert's testimony, and I, in turn, am reducing the expert's fees accordingly. Plaintiffs are awarded $23,000 for their expert.

Finally, defendants argue that this fee award must be apportioned to each plaintiff individually. I disagree. The work performed by the attorneys was done on behalf of all the plaintiffs. Notwithstanding that this was not a class action suit, the services rendered benefitted all plaintiffs.

Plaintiffs are awarded $580,102.00 in attorneys' fees and $23,000.00 in expert witness fees. So ordered.