USCA1 Opinion

 

 May 3, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1202 JOSEPH F. CONSOLO, Plaintiff - Appellee, v. DANIEL F. GEORGE, ET AL., Defendants - Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Young,* District Judge. ______________ _____________________ Donald V. Rider, Jr., Assistant City Solicitor, with whom _____________________ David M. Moore, City Solicitor, and Diana H. Horan, Assistant _______________ _______________ City Solicitor, were on brief for appellants. Thomas C. Cameron, with whom Dennis J. Curran, and Curran & __________________ ________________ ________ Cameron, were on brief for appellee. _______ ____________________ ____________________  ____________________ * Of the District of Massachusetts, sitting by designation. Per Curiam. Pursuant to 42 U.S.C. 1988(b) and 1st Per Curiam ___________ Cir. R. 39.2, Joseph F. Consolo ("Consolo") here seeks attorney fees incurred in defending a jury verdict in his favor both on appeal and through a futile petition for certiorari. BACKGROUND BACKGROUND A jury awarded Consolo $90,000 in damages against Worcester police officers Daniel George ("George") and Michael Mulvey ("Mulvey") for violations of Consolo's civil rights. George and Mulvey appealed four issues to this Court and we affirmed in all respects. Consolo v. George, 58 F.3d 791 (1st _______ ______ Cir.), cert. denied, 116 S. Ct. 520 (1995). _____ ______ On behalf of Consolo, Attorneys Thomas C. Cameron ("Cameron") and Dennis J. Curran ("Curran") filed a fee application (the "Application") for award of appellate counsel fees pursuant to 42 U.S.C. 1988(b). In the Application, Consolo also requested an award of expenses and fees for paralegal Kenneth O'Sullivan ("O'Sullivan"). Consolo also filed a supplemental fee application (the "Supplemental Application") for services related to opposing certiorari. George and Mulvey's objections to the Application and Supplemental Application fall into six general categories: (1) the timeliness of Consolo's appeal; (2) the adequacy of records kept by Cameron and Curran regarding their fees and expenses; (3) whether work performed by Cameron and Curran was necessary and productive; (4) the reasonableness of rates charged by Cameron and Curran; (5) whether work performed by O'Sullivan was necessary and productive; and (6) the reasonableness of expenses charged by Cameron and Curran. DISCUSSION DISCUSSION Traditionally, litigants have borne their own legal costs. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 ___ ___________________________ _________________ U.S. 240, 247 (1975). Certain statutes and equitable doctrines permit departure from this tradition. See In re Thirteen ___ ________________ Appeals, 56 F.3d 295, 304-305 (1st Cir. 1995). Under the Civil _______ Rights Attorney's Fees Awards Act of 1976, courts may award reasonable attorney's fees to a prevailing party in a civil rights action. 42 U.S.C. 1988(b). In authorizing such awards, Congress intended to reduce the financial impediments that hinder individuals from asserting their rights. Furtado v. Bishop, 635 _______ ______ F.2d 915, 918-19 (1st Cir. 1980). Courts grant attorney's fees under 1988(b) unless there is a special reason compelling denial. Supreme Ct. v. ____________ Consumer's Union of the United States, Inc., 446 U.S. 719, 737 _____________________________________________ (1980). Prevailing plaintiffs may receive fees for time spent defending an appeal, if the plaintiff is ultimately successful. See Souza v. Southworth, 564 F.2d 609, 613 (1st Cir. 1977). ___ _____ __________ Parties may also receive fees for time spent litigating fee applications. Lund v. Affleck, 587 F.2d 75, 77-78 (1st Cir. ____ _______ 1978). A. Timeliness of Consolo's Application A. Timeliness of Consolo's Application ___________________________________ George and Mulvey object to the Application and Supplemental Application, claiming that both are untimely. The governing local rule regarding appellate fee applications states: -3- An application . . . for an award of fees and other expenses . . . shall be filed with the clerk of the court of appeals within 30 days of the date of entry of _______________ the final circuit judgment . . . . For purposes of the 30-day limit, a judgment shall not be considered final until the time for filing an appeal or a petition for a writ of certiorari has expired, or judgment is entered by the court of last resort.  1st Cir. R. 39.2 (emphasis added). Consolo filed the Application on August 8, 1995. The Supreme Court denied George and Mulvey's Petition for Writ of Certiorari on November 27, 1995. Consolo filed the Supplemental Application on December 15, 1995. 1. Supplemental Fee Application 1. Supplemental Fee Application George and Mulvey note that parties may petition the Supreme Court for rehearing up to 25 days after denial of certiorari. Sup. Ct. R. 44.2. For purposes of 1st Cir. R. 39.2, George and Mulvey contend that final judgment does not occur until this 25 day period ends. However, "[t]he order of denial will not be suspended pending disposition of a petition for rehearing except by an order of the Court or a Justice." Sup. Ct. R. 16.3. The Supreme Court issued no such order in the instant case. Without a delaying order, denial of certiorari is final judgment for the purposes of the local rule. After this final judgment, Consolo's attorneys had 30 days to file an application for attorney's fees. 1st Cir. R. 39.2. Consolo met this requirement by filing on December 15, 1995. Therefore, Consolo's Supplemental Application -4- is timely under 42 U.S.C. 1988(b) and 1st Cir. R. 39.2. 2. Fee Application 2. Fee Application Rule 39.2 serves three purposes: (1) it promotes fairness by requiring parties to apply for fees within a reasonable time after a case's resolution; (2) it advances judicial efficiency by reducing of the number of fee applications filed; and (3) it prevents this Court from issuing awards under  1988(b) inconsistent with subsequent decisions on the case. George and Mulvey contend that Consolo filed his Application prematurely, and that the Court should deny both the Application and the Supplementary Application.2 George and Mulvey argue that we should interpret 1st Cir. R. 39.2 to deny applications filed before final judgment. Because Consolo filed his Application before the Supreme Court denied certiorari, the Application was most certainly premature. Consolo's Supplemental Application, however, amended and expanded his Application. Thus, even though Consolo's first application was premature, the Supplemental Application incorporated and cured the Application. Since the Supplemental Application is timely under 1st Cir. R. 39.2, we must, therefore, examine the claims presented in both the Application and Supplemental Application. B. Reasonableness of Consolo's Applications B. Reasonableness of Consolo's Applications This Court has customarily thought it best to calculate reasonable fees through the lodestar time and rate method.  ____________________ 2 Paradoxically, George and Mulvey also argue in the alternative that Consolo's first application was late, first acknowledging but then choosing to ignore the plain test of 1st Cir. R. 39.2. -5- Tennessee Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 __________________________ _________________ (1st Cir. 1994); but see In re Thirteen Appeals, 56 F.3d at 305- ___ ___ ______________________ 308 (common fund cases). The lodestar is a numerical point of reference reached by multiplying the total number of hours reasonably spent by a reasonable hourly rate. Grendel's Den, ______________ Inc. v. Larkin, 749 F.2d 945, 950 (1984) (citing Hensly v. ____ ______ Eckerhart, 461 U.S. 424, 433-34 [1983]). The lodestar is a presumptively reasonable fee, but it is subject to upward or downward adjustment for special circumstances. Lipsett v. _______ Blanco, 975 F.2d 934, 937 (1st Cir. 1992) (citing Blum v. ______ Stenson, 465 U.S. 886, 897 [1984]). 1. Adequacy of record keeping 1. Adequacy of record keeping For the Court to determine whether hours billed are reasonable, applicants must provide highly detailed records of their time expenditures. Phetosomphone v. Allison Reed Group, _____________ ____________________ Inc., 984 F.2d 4, 7 (1st Cir. 1993) (citing Grendel's Den, Inc., ____ 749 F.2d at 952). The Court demands specific information regarding the number of hours, dates, and the nature of work performed. Deary v. City of Gloucester, 9 F.3d 191, 197-98 (1st _____ ___________________ Cir. 1993) (citing Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 [1st Cir. 1986]). Lack of contemporaneous records calls for substantial reduction or denial of fee awards, except in "extraordinary circumstances." Id. While this Court has not ___ demanded inclusion of the actual, contemporaneously kept time sheets or records in fee applications, their inclusion aids the Court in more easily assessing the validity, necessity, and -6- reasonableness of hours billed. Applicants fail to supply such records at their peril. See id. (noting that submission of ___ ___ actual time slips allowed a trial court to deny 78 of 699.4 hours requested). Here, Consolo's Application and Supplemental Application included affidavits that distilled records contemporaneously kept by Cameron, Curran, and O'Sullivan. The Application and Supplemental Application did not include their original time sheets. Normally an attorney's account of time spent must be scrutinized with care. Calhoun, 801 F.2d at 560; _______ Grendel's Den, Inc., 749 F.2d at 950. Without original time ____________________ sheets, we hold an applicant's summary of hours spent to an even higher level of scrutiny. Here, we must use our own experience and judgment to determine if Cameron and Curran's billing accurately reflects time spent. We resolve inconsistencies and ambiguities against the applicant. Before calculating the lodestar, we must address two issues of some concern to this Court. The first issue relates to the Application. On July 19, 1994, Curran filed a Motion to Enlarge Time to File Brief. The Motion to Enlarge would have extended the deadline to file Consolo's Appellate Brief from July 14, 1994 to July 21, 1994. In that Motion to Enlarge, Curran represented that Consolo's attorneys needed the additional time "to proofread the Brief, review transcript references and reproduce trial exhibits for this appeal." Plaintiff-Appellee's Motion to Enlarge Time to File Brief at 2. The Court granted -7- this Motion on July 21, 1994, so counsel could perform these clerical tasks. In the Application, Curran and Cameron requested reimbursement for work performed during this additional week. Some of the work claimed during this period is unrelated to the limited, clerical tasks described in the Motion to Enlarge.3 Poor record keeping by Cameron and Curran may have resulted in inaccurate billing during this period. Alternatively, Curran may have misrepresented the reasons for his Motion to Enlarge Time. In either case, the Court is not disposed to grant attorney's fees for these inconsistencies. See ___ Brewster v. Dukakis, 3 F.3d 488, 494 n.6 (1st Cir. 1993) (noting ________ _______ that courts can and should deny recovery for such "sloppy" record keeping). Unfortunately, Consolo's application did not adequately distinguish between time spent on clerical (permitted under the Motion to Enlarge) and non-clerical tasks.4 Because  ____________________ 3 Work that falls outside of Consolo's Motion to Enlarge Time includes: July 15, 1994 "[B]egin drafting Statement of Facts." July 18, 1994 "Revise Statement of Facts." July 19, 1994 "[R]evise Statement of Facts for Brief." 4 This is the source of much difficulty concerning the Application and Supplemental Application. Cameron and Curran provided the number of hours spent on Consolo's case per day, and roughly the subject matter or task on which they spent this time. While they did divide the number of hours spent by attorney, they did not divide the number of hours by task. For example, Curran claims he spent 5.05 hours on July 14, 1994, "continu[ing] review of ten volumes of trial transcript to prepare [the] Statement of Facts for Brief; [and in] telephone conferences with [the] Clerk's Office and with [defense counsel]." This forces the Court to guess how much time Curran spent in review of the volumes and how much was spent in telephone conferences. Applicants should consider detail almost as important as conscientious and accurate reporting. -8- we are unable to distinguish these time periods, any work performed inconsistent with the Motion to Enlarge will result in denial of award for that day. Thus, we will not consider Curran's application for 10.3 hours on July 15 and 19, 1994 in our calculation of the lodestar. Similarly, we will ignore Cameron's application for 1.3 hours on July 18, 1994. The second issue relates to the Supplemental Application; it contains disturbingly similar inaccuracies as those discussed above. Under oath, Curran stated that he spent one hour making revisions to the Supplemental Application and supporting materials drafted by Cameron. Yet, Curran requests .9 __________________ hours for his own work spent to draft the Supplemental Application. He also claims a separate .8 hours to revise the Supplemental Application. We demand the strictest level of accuracy, honesty, and good faith in applications for fees under 1988(b). The Court will deny any section of an application containing inaccurate statements; we will similarly deny applications that are knowingly incorrect. Thus we deny .9 hours from calculation of the lodestar in Consolo's Supplemental Application. 2. Necessity of work performed by Consolo's attorneys 2. Necessity of work performed by Consolo's attorneys Defendants strenuously object to Consolo's application for fees regarding preparation for, and attendance at, two Civil Appeal Management Program pre-argument conferences (the "Appeal Conferences"). Both Cameron and Curran attended these two Appeal Conferences. The Court requires these conferences to promote -9- judicial efficiency. We give notice that the Court demands a high degree of comprehension of the legal and factual issues presented. Thus, this Court will award fees for preparation for, and attendance at, the Appeal Conferences. However, 1988(b) is not a full employment program. Where one attorney would have been sufficient, 1988(b) will not allow recovery of fees for the work of two; the Court will discount the work of superfluous attorneys. Hart v. Bourque, 798 F.2d 519, 523 (1st Cir. 1986) ____ _______ (citing King v. Greenblatt, 560 F.2d 1024, 1027 [1st Cir. 1977], cert. denied, 438 U.S. 916 [1978]). Courts should ordinarily _____ ______ greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism. Pearson v. Fair, _______ ____ 980 F.2d 37, 47 (1st Cir. 1992) (internal citations omitted). Similarly, we should not shift fees for time spent in review of another attorney's research. Hart, 798 F.2d at 522-23. This ____ Court will only include the work of one attorney's preparation and appearance for the Appeal Conferences when calculating the number of "reasonable hours" for the lodestar. Since it appears that Curran performed the great majority of the preparatory work for these conferences, we find that his work was reasonable under Hart and Pearson. Therefore, when calculating the number of ____ _______ reasonable hours for the lodestar, we will not include 2 hours on March 30, 1994, and .75 hours on May 12, 1994, claimed by Cameron in conjunction with the Appeal Conferences. George and Mulvey object to the Application regarding work performed in preparation for oral argument. While Cameron -10- presented oral argument, Curran provided research. George and Mulvey would limit Consolo's recovery for this overlap. Such limitations are appropriate where there is redundancy in legal work. Hart, 798 F.2d at 523. At best, Curran and Cameron's ____ arrangement was an inefficient use of resources. For example, while Cameron's attendance would have been sufficient, Curran joined his co-counsel in conferences with consultants. Section 1988(b) does not compel recovery for waste.5 This Court will consider only one attorney's work in research of the oral argument toward the number of "reasonable hours spent" for the lodestar. Therefore, we deduct 7.6 hours from our calculation of reasonable hours spent.6 We do, however, allow recovery of the fees for both attorneys' attendance at the appellate hearing, as Curran was present to answer any factual questions regarding the trial and Cameron argued the substantive issues of law. Courts should not read the requirements of "reasonable hours expended" to limit their own factfinding process.  ____________________ 5 The attendance of two attorneys at the Appeal Conferences is not per se superfluous. However, given the lack of ________ contemporaneous time records and the application's inconsistencies, Consolo's application fails to meet its burden of proof for this expense. Similarly, we do not hold as matter of law that Cameron and Curran's research arrangement was duplicative. Nevertheless, in this instance we find that Consolo has failed to justify this expense. 6 We deduct 1.1 hours for work on August 25, 1994; 1.8 hours for work on September 6, 1994; .7 hours for work on September 7, 1994; and 4.0 hours for work on September 8, 1994. -11- 3. Reasonable fees per hour 3. Reasonable fees per hour The fee per hour for work on the litigation is the "core rate." Brewster, 3 F.3d at 492 n.4. Applicants should ________ bill other work, including work on the application itself, at a reduced "non-core rate." Id. A reasonable hourly rate is the ___ prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills. Blum v. Stenson, 465 U.S. 886, 895 & n.11. "Absent more unusual ____ _______ circumstances . . . the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983). _____ ____ Consolo contends that the relevant legal market is Boston, where this Court heard the appeal. Consolo provided an affidavit declaring that $175 per hour is a reasonable fee for such work in Boston. George and Mulvey claim that the relevant legal community is Worcester, where the incidents giving rise to the claim occurred. George and Mulvey provide no evidence regarding Boston area fees, but provide an affidavit declaring that the relevant per hour fee in Worcester is $150. Here, the district judge allowed Consolo's request for $175 per hour for trial work in Worcester. We defer to the determination by the trial judge and consider $175 the "core rate," a reasonable fee per hour for purposes of the lodestar.7  ____________________ 7 Because the trial court concluded that $175/hr. was a reasonable fee in Worcester and George and Mulvey admit that $175/hr. was a reasonable fee in Boston, we need make no determination as to whether the trial court or the appellate court's legal community is used in calculation of the lodestar. -12- Consolo also applied for fees in conjunction with the creation of the fee applications themselves. "Time reasonably expended in connection with a fee application is compensable . . . but it may be fairly compensated at a reduced rate." Brewster, ________ 3 F.3d at 494 (internal citations omitted). Applicants often spend such time doing little more than documenting action previously taken. Id. In this case, we will allow "non-core" ___ work such as this at one-half the "core rate." Thus, the fee per hour for work on the Application and Supplemental Application is $87.50. 4. Lodestar calculation 4. Lodestar calculation Consolo applied for a total of 157.9 hours under the Application. This Court denied 11.3 hours from the calculation of the lodestar for the obvious inconsistencies in that application. As noted above, this Court also denied 10.35 hours within the lodestar, as these hours represent unnecessary or redundant work. Thus, this Court finds that 136.25 hours was a "reasonable number of hours" for purposes of the lodestar. Of the 136.25 hours, 116.05 hours are billed at the "core rate," $175 per hour, for appellate related work. The remaining 20.2 hours are billed at $87.50 per hour, half the "core rate," for application related work. Therefore, Consolo's lodestar for his Application is $22,076.25.8 Under the Supplemental Application, Consolo seeks fees for 41.1 hours. Of these, Cameron and Curran spent 29.7 hours on  ____________________ 8 (116.05 x $175) + (20.2 x $87.50). -13- certiorari-related activities; recovery for these hours is at the "core rate" of $175. Cameron and Curran spent the remaining 11.4 hours either on Consolo's rebuttal memorandum or on the supplemental fee application. This Court denied .9 hours from calculation of the lodestar, due to inconsistencies regarding time spent on the Supplemental Application. We compensate the remaining 10.5 at one-half of the "core rate," $87.50. Therefore, Consolo's lodestar for the Supplemental Application is $6,116.25.9 Consolo's total lodestar is $28,192.50.10 5. Special factors 5. Special factors Courts may depart from the lodestar to compensate for "special circumstances." Lipsett, 975 F.2d at 937. Here, the _______ Court addressed the concerns of both parties when it calculated the lodestar. We, therefore, find no reason to depart from the lodestar in awarding appellate and certiorari fees. We must satisfy ourselves of the overall fairness and reasonableness of the fee under these particular circumstances. Lund, 587 F.2d at ____ 77. This lodestar meets these requirements. Thus, the Court awards Consolo $28,192.50 for attorney's fees under 42 U.S.C.  1988(b). 6. Paralegal fees under 1988(b) 6. Paralegal fees under 1988(b) Consolo also applied for $1,312.50 in paralegal fees. Consolo claims that O'Sullivan spent 37.5 hours on the appeal, for which Consolo claims compensation at $35 per hour. Courts  ____________________ 9 (29.7 x $175) + (10.5 x $87.50). 10 $22,076.25 + $6116.25. -14- may grant paralegal fees pursuant to 42 U.S.C. 1988(b). Missouri v. Jenkins, 491 U.S. 274, 285 (1989). Courts commonly ________ _______ use the lodestar for calculation of such fees. Id. ___ O'Sullivan's work included attendance at the Appeal Conferences and the oral argument before this Court. As stated above, we deny recovery where the work performed by an attorney is redundant. Hart, 798 F.2d at 523. We will also deny recovery ____ for unnecessary paralegal work. O'Sullivan's attendance at the conferences and the hearing was unnecessary; we will not shift this expense to George and Mulvey. Thus we deny recovery for 5.4 hours of O'Sullivan's claim. "Purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." Jenkins, 491 U.S. at 288 n.10. Some of O'Sullivan's claimed time _______ is clerical.11 The court will not order a shift of fees for this time; therefore, we deny an additional 4.05 hours requested by Consolo for O'Sullivan's work. The remaining 28.05 hours constitute a "reasonable number of hours" for O'Sullivan's  ____________________ 11 Tasks that are clearly clerical include: March 21, 1994 Review file .15 hours April 18, 1994 Locate documents .3 hours in file July 20, 1994 To Copy Cop .3 hours July 21, 1994 Reorganize file 1.3 hours July 22, 1994 Continue to .4 hours reorganize file September 6, 1994 Locate documents .2 hours for oral argument September 7, 1994 Locate documents .5 hours for oral argument January 26, 1995 Retrieve documents .5 hours July 5, 1995 Locate documents .4 hours -15- lodestar. George and Mulvey did not contest the $35 per hour rate claimed by O'Sullivan. Thus, we adopt this as the "core rate" for O'Sullivan's lodestar. We see no reason to deviate from the lodestar in this case as we find no "special circumstances" that merit an increase or decrease. See Lipsett, ___ _______ 975 F.2d at 937. Thus, this Court awards Consolo $981.75 for O'Sullivan's fees.12 7. Expenses 7. Expenses Courts may include an attorney's reasonable expenses when awarding fees under 1988(b). Grendel's Den, Inc., 749 ____________________ F.2d at 951. Section 1988(b) provides for awards of "incidental and necessary expenses incurred in furnishing effective and competent representation." Northcross v. Board of Educ., 611 __________ _______________ F.2d 624, 639 (6th Cir.), cert. denied, 447 U.S. 911 (1979). _____ ______ Consolo claimed $290.78 in his Application for expenses relating to the appeal. He also claimed $427.71 in the Supplemental Application for certiorari-related expenses. We will not shift the cost of long-term investments made during litigation. Included in his Application, Curran requests $117.91 for a police misconduct litigation treatise. We do not question the usefulness of this text; however, attorneys should make a good faith effort to minimize expenses before filing for fees under 1988(b). We find no such effort here. Certainly, Consolo's attorneys could have borrowed the text from a library for a significantly smaller sum. Thus we deny payment  ____________________ 12 28.05 x $35.00. -16- for this expense. George and Mulvey objected to expenses for the transcript of the Defendant's closing argument. George and Mulvey claim that Consolo never used the transcript, and thus we should not shift its cost. We think it is inappropriate to cross-reference expenses to the text of an Appellant's Brief when awarding fees. It is likely that Cameron and Curran investigated a course of argument they later deemed unworthy. Denying such research is contrary to the purpose of 1988(b). Thus, the Court grants Consolo's request for $84 for the transcript of the closing argument. George and Mulvey also contest the use of a courier to send Consolo's appellate brief to the Defendants' counsel. This service cost $14. Consolo appears to have retained the courier in good faith; it was a reasonable attempt to provide George and Mulvey with a copy of the brief. Thus we grant the request for $14. Consolo requests $54.15 in photocopy and library expenses. Parties may recover such reasonable expenses.13 See, e.g., Northcross, 611 F.2d at 639. George and Mulvey do not ___ ____ __________ object; thus this expense is granted. George and Mulvey also do not object to a $8.39 expense for a videotape; this is granted. The remaining $26.27 in the Application was an expense Consolo should have obtained under Fed. R. App. P. 39.  ____________________ 13 Counsel billed $3.20 of Consolo's fee application for costs to "misc." and not to Consolo. We do not consider this amount in our calculations. -17- Applicants should not seek such costs under the aegis of a  1988(b) action. Therefore, we grant $143.40 in expenses under the Application.14 In the Supplemental Application, Consolo included a bill from a legal publisher clearly identifying necessary and reasonable expenses related to certiorari. While we have no record of payment, bills such as these are rebuttable evidence of an expense. We presume that Cameron and Curran will pay this bill. If George and Mulvey had demonstrated otherwise, we would not have shifted this expense. Thus, we grant $327.71 for reproduction and service of Consolo's Brief in Opposition. Finally, Cameron requests $100 reimbursement for admission fees to the bar of the Supreme Court. George and Mulvey do not object to this expense; it is thus granted. C. Conclusion C. Conclusion In total, this court awards $29,745.36 to Consolo for appellate and certiorari attorney's fees and costs pursuant to 42 U.S.C. 1988(b) and 1st Cir. R. 39.2.  ____________________ 14 $290.78 - ($117.91 + $26.27 + $3.20). -18-