# United States Court of Appeals

## For the First Circuit

No. 06-2028

ALBERTHA BOGAN, individually and as Guardian and next Friend of
TYLA BOGAN, ERYN BOGAN and CHAD BOGAN,

Plaintiffs, Appellants,

v.

CITY OF BOSTON, BOSTON POLICE DEPARTMENT, BOSTON FIRE
DEPARTMENT, CITY OF BOSTON INSPECTIONAL SERVICES DEPARTMENT,
MAYOR THOMAS M. MENINO, KEVIN JOYCE, LUIS ARJONA, JAMES HOLMES,
and REGINA HANSON, NEIGHBORHOOD DEVELOPMENT CORPORATION of GROVE
HALL, and VIRGINIA MORRISON,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]
[Hon. Marianne B. Bowler, U.S. Magistrate Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Nancy Sue Keller, with whom Harold Jacobi, III and Jacobi &
Associates, were on brief, for appellants.
Thomas R. Donahue, Assistant Corporation Counsel, with whom
Elizabeth L. Bostwick, Assistant Corporation Counsel, was on brief,
for appellees.

June 12, 2007

**HOWARD**, **Circuit Judge**.  This is an appeal by prevailing parties in civil rights litigation against the City of Boston, Massachusetts.  The appellants have raised several claims of error, the most important of which concerns circumstances under which a rejected offer of judgment, pursuant to Fed. R. Civ. P. 68, will cut off a prevailing party's entitlement to attorney's fees.

Albertha Bogan and her three children[1] brought an action against the City, Mayor Thomas Menino, Commissioner of Inspectional Services Kevin Joyce, three Inspectional Services employees,[2] the Neighborhood Development Corporation of Grove Hall (NDC), and one of its founding members, Virginia Morrison, claiming violations of 42 U.S.C. § 1983 and various torts under Massachusetts law.  The plaintiffs alleged that Inspectional Services employees illegally inspected the Bogans' property in the Dorchester section of Boston, at the behest of Mayor Menino, to force them to sell their property in favor of an economic development project spearheaded by the NDC.  The defendants claimed that the inspection was ordered because the property was being operated as an illegal rooming house and was in disrepair.

The inspection took place in March 1999 and resulted in the issuance of fifty building code violation citations and a rooming house violation.  As a result of the inspection, the City

---

[1]Tyla Bogan, Eryn Bogan and Chad Bogan.

[2]Luis Arjona, James Holmes, and Regina Hanson.

ordered the Bogans to vacate the property and that it be condemned. A few days after the inspection, the City filed a complaint in the Massachusetts Housing Court to enforce the condemnation order. The Bogans resisted the Housing Court complaint and also litigated the validity of the code violation citations before the Massachusetts Building Code Appeals Board. In June 1999, the Housing Court found that the inspection of the Bogans' home was an illegal regulatory search and vacated virtually all of the code violations.

Almost three years later, on March 22, 2002, the Bogans filed the instant federal action, claiming damages as a result of the defendants' inspection and post-inspection conduct. The complaint stated claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments, as well as trespass, conversion of real and personal property, invasion of privacy, harassment, and intentional infliction of emotional distress.

In due course, the City and individual defendants moved for partial summary judgment. The district judge granted summary judgment for the individual defendants on the § 1983 claim because they were sued only in their official capacities and their presence was not necessary since the City was sued directly. The judge also granted summary judgment for the City on the tort claims on the basis of sovereign immunity. The judge did, however, permit most of the tort claims to proceed against Joyce and the other

Inspectional Services employees.[3] As for the state law claims against Mayor Menino, the judge granted summary judgment on the trespass, conversion, and invasion of privacy claims because the Mayor was not present during the inspection, and on the intentional infliction of emotional distress claim because there was no evidence that the Mayor ordered the inspection to cause the Bogans distress.[4]

On March 10, 2005, the City made the Bogans an offer of judgment under Fed. R. Civ. P. 68 for $50,000, which they rejected. The district judge then ordered the bifurcation of the remaining claims so that the § 1983 claims against the City and the tort claims against Joyce would be tried first. See Fed. R. Civ. P. 42(b).

In September 2005, the parties agreed to try the case to a jury before a magistrate judge. After an eight-day trial, the jury found in favor of the Bogans on the § 1983 claim against the City, but found in favor of Joyce on the tort claims. The jury awarded the Bogans a total of $30,000 in damages.[5] The defendants

---

[3]The judge dismissed the harassment claim against all defendants because harassment is not a recognized tort under Massachusetts law.

[4]The judge also granted summary judgment to the NDC and Morrison because there was no evidence that they were involved in any wrongdoing.

[5]Albertha Bogan was awarded $15,000 and her children were awarded $5,000 each.

then moved to dismiss the remaining tort claims on the ground that any damages award at a second trial would be duplicative because the § 1983 award against the City compensated the Bogans for their entire injury. The magistrate judge agreed and dismissed the remaining claims.

Thereafter, the Bogans moved for an award of $113,311.50 in attorney's fees and $13,389.33 in costs under 42 U.S.C. § 1988. The magistrate judge reduced the fee award to $13,264.87 and the cost award to $3,694.84. The judge then entered a final judgment ordering the City to pay the Bogans a total of $46,959.71. The Bogans filed this appeal, raising a series of challenges to rulings made during the pretrial and trial proceedings and to various reductions made in their request for fees and costs.

The Bogans first claim that they were prejudiced by the improper issuance of a protective order preventing them from deposing Mayor Menino. The district judge granted the protective order on the ground that the Bogans had failed to demonstrate that the information they sought from the Mayor was unavailable from other sources. The Bogans contend that they should have been allowed to depose the Mayor because they uncovered evidence that the Mayor directly ordered the inspection of their property. They hypothesize that, if they had been permitted to depose the Mayor, they may have learned that he ordered the search to intimidate them

into selling their property to make way for the NDC-sponsored project.

The district court is empowered by Fed. R. Civ. P. 26(c) to grant a protective order from discovery for "good cause shown." Appellate review of such orders is limited. "We will intervene in [discovery] matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Ayala-Gerena v. Bristol Myers Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996).

The need for limited access to high government officials through the discovery process is well established. In United States v. Morgan, 313 U.S. 409, 422 (1941), the Supreme Court indicated that the practice of calling high ranking government officials as witnesses should be discouraged. Relying on Morgan, other courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action. Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985); see also In re United States (Holder), 197 F.3d 310, 313 (8th Cir. 1999); In re FDIC, 58 F.3d 1055, 1060 (5th Cir. 1995); In re United States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993). This rule is based on the notion that "[h]igh ranking government officials have greater duties and time constraints than

other witnesses" and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation. Kessler, 985 F.2d at 512.

But this limitation is not absolute. Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated. See Baine v. Gen. Motors Corp., 141 F.R.D. 332, 335 (M.D. Ala. 1991); Church of Scientology of Boston v. IRS, 138 F.R.D. 9, 12 (D. Mass. 1990); Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd., 96 F.R.D. 619, 621 (D.D.C. 1983). However, even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information. Holder, 197 F.3d at 314.

The parties agree that Mayor Menino is a high ranking government official and therefore is not subject to being deposed absent a demonstrated need. See Marisol v. Giuliani, 1998 WL 132810, at *4 (S.D.N.Y. Mar. 23, 1998) (treating a mayor as a high ranking government official for purposes of a motion for a protective order from discovery). The question therefore is whether the Bogans established sufficient need to warrant discovery directly from the Mayor. The Bogans rely on evidence that defendant Hanson, one of the Inspectional Services employees, wrote a note on the day of the inspection to the effect that the Mayor's office had received complaints from neighbors about the Bogans' property and that the Mayor had ordered the inspection as a result.

-7-

They also rely on the fact that the inspection was ordered on the heels of their disclosing to the NDC that the property was being used as a rooming house. The Bogans assert that these strands of evidence support an inference that the Mayor ordered the inspection on a tip from the NDC because of their shared goal to force the Bogans from the property.

The Bogans' argument founders because they did not pursue other sources to obtain relevant information before turning to the Mayor. Hanson testified that she did not recall why she had written that the Mayor had ordered the inspection, and Joyce testified that he ordered the inspection without a directive from the Mayor. Thus, the identity of the City official who ordered the inspection and the reason for the inspection were disputed issues of fact. The Bogans nevertheless failed to purse discovery from other City employees who could have shed light on the Mayor's involvement. In particular, the Bogans did not seek discovery from any of the Mayor's aides. It is certainly likely that at least one of these employees was involved and could have clarified the Mayor's role. It was therefore incumbent on the Bogans to seek information from these individuals before turning to the Mayor. See Alexander v. FBI, 186 F.R.D. 1, 5 (D.D.C. 1998) (denying a request for discovery of a high ranking government official because "there are other avenues of discovery that plaintiffs may purse to establish their theory"); Marisol A., 1998 WL 132810, at *4

(granting the mayor a protective order where relevant discovery could be obtained from other city employees). Accordingly, the district judge did not abuse his discretion in issuing a protective order for Mayor Menino because the Bogans had not exhausted other available avenues of discovery.

The Bogans also claim that, even on the record as it existed without the additional discovery, summary judgment was improvidently granted on the intentional infliction of emotional distress claim against the Mayor.[6] We review the grant of summary judgment de novo, construing the record in favor of the nonmoving party. See Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 47 (1st Cir. 2004). Summary judgment is appropriately granted where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Id.

The district judge granted summary judgment for the Mayor on the ground that there was no evidence that the Mayor ordered the inspection of the Bogans' property for the purpose of inflicting emotional distress. We agree. The note written by Hanson was sufficient to permit a factfinder to conclude that the Mayor ordered the inspection. But there is no evidence that would permit a finding that the Mayor did so to inflict emotional distress on

---

[6]There is no developed argument concerning the grant of summary judgment for the Mayor on the other intentional tort claims or against Morrison and the NDC on any of the claims. Therefore, any challenges to these rulings are waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

the Bogans.  See Conley v. Romeri, 806 N.E.2d 933, 937 (Mass. App. Ct. 2004) (stating that to prevail on an infliction of emotional distress claim, the plaintiff must establish "that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of [the] conduct").  The note itself stated that the Mayor ordered the inspection because of neighbor complaints about the Bogans' property.  The Bogans contend that this reason was false and that the Mayor ordered the inspection because he wanted to force them from the property.  This is mere conjecture.  See Podiatrist Ass'n, Inc. v. La Cruz De P.R., Inc., 332 F.3d 6, 17 (1st Cir. 2003) (stating that a claim based on "unsupported conjecture . . . cannot withstand summary judgment").  The Bogans have not identified evidence of the Mayor's desire to promote the proposed development project by evicting the Bogans or even that the NDC and the Mayor discussed the status of the Bogans' property.  Indeed, there is nothing in the record to suggest that the rationale articulated in Hanson's note was pretext.  On this record, the district judge correctly found that Mayor Menino was entitled to summary judgment on the intentional infliction of emotional distress claim.

The Bogans next contest a series of rulings by the magistrate judge excluding the admission of various pieces of evidence at trial, but they have not filed a trial transcript.  The party asserting a claim of error maintains the burden of procuring

-10-

the transcript where a transcript is necessary to decide the claims. See Fed. R. App. P. 10(b); Feliciano-Hill v. Principi, 439 F.3d 18, 23 n.3 (1st Cir. 2006).[7] Because the review of evidentiary rulings are typically fact-intensive and an erroneous evidentiary ruling does not require a new trial if harmless, see Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 855 (1st Cir. 1998), the relevant transcripts are essential to meaningful appellate review. Accordingly, "[c]hallenges to the admission of evidence will not be considered by the Court of Appeals in the absence of a record containing those portions of the transcript on which the appellant relies." United States v. Davis, 60 F.3d 1479, 1482 (10th Cir. 1995) (internal citation omitted); see Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002). Because the Bogans have not provided an adequate record to review their evidentiary challenges, we decline to consider them. See Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999).

Finally, the Bogans challenge the magistrate judge's ruling that it was not necessary to try the tort claims against the remaining Inspectional Services employees. They argue that permitting a second trial on these tort claims could result in an award of damages for injuries that they suffered post-inspection,

---

[7]In the alternative, a party can submit an agreed statement of the record or a statement of proceedings approved by the district court. See Fed. R. App. P. 10(c) & (d). The Bogans pursued neither of these avenues.

which they contend were not encompassed in the § 1983 award against the City. According to the Bogans, they presented two theories of § 1983 liability against the City, one based on the Fourth Amendment and the other based on the Fourteenth Amendment. The Fourth Amendment claim, they say, was limited to damages arising from the inspection itself, while the Fourteenth Amendment claim encompassed damages arising from the City's post-inspection conduct. The Bogans interpret the modest amount awarded on the § 1983 claim to mean that the jury compensated them for injuries sustained during the inspection but not for post-inspection damages.

"[T]he law abhors duplicative recoveries"; thus double awards for the same injury are impermissible. Dopp v. HTP Corp., 947 F.2d 506, 517 (1st Cir. 1991). Compensatory damages in § 1983 cases remedy only actual injuries caused by the violation, and the level of damages is ordinarily determined according to common law tort principles. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 313 (1986); Acevedo-Garcia v. Monroig, 351 F.3d 547, 567-68 (1st Cir. 2003). Thus, "[i]f a [§ 1983] claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery." Mason v. Okla. Tpk. Auth., 115 F.3d 1442, 1459 (10th Cir. 1997) (internal citation omitted).

The magistrate judge concluded that the Bogans' trial presentation of their Fourth and Fourteenth Amendment theories was identical -- encompassing both the City's inspection and post-inspection conduct and seeking all damages incurred as a result. Because the Bogans have not provided us with a trial transcript, we have no basis to question the magistrate judge's view of the evidence. We note, however, that this view is consistent with the Bogans' statement at the pretrial conference that all of their claims were based on the same underlying facts. And it is also consistent with the Bogans' acceptance of a verdict form on the § 1983 claim that did not require the jury to distinguish between the Fourth Amendment and Fourteenth Amendment theories of liability. In these circumstances, the magistrate judge correctly ruled that the jury awarded full compensation to the Bogans, and therefore a subsequent trial on the remaining claims was unwarranted. See Gilmere v. City of Atlanta, 864 F.2d 734, 740-41 (11th Cir. 1989) (holding that the district court properly refused to award damages for state-law tort claims where the jury had awarded damages on § 1983 claims based on identical facts).

We now turn to the Bogans' challenges to the award of fees and costs. We first summarize the magistrate judge's ruling and then consider the Bogans' specific challenges.

Under 42 U.S.C. § 1988, the fee-shifting statute under which the Bogans were awarded fees for prevailing on their § 1983

-13-

claim, a trial court generally should employ the lodestar method to calculate fees. Under this method, a court usually should begin with the attorneys' contemporaneous billing records. <u>Gay Officers Action League</u> v. <u>Puerto Rico</u>, 247 F.3d 288, 295 (1st Cir. 2001). The court should then subtract hours that are duplicative, unproductive or excessive and multiply the reasonable hours billed by the prevailing attorney rate in the community. <u>Id.</u>; <u>Lipsett</u> v. <u>Blanco</u>, 975 F.2d 934, 937 (1st Cir. 1992). The resulting amount constitutes the lodestar. After calculating the lodestar, the court may then adjust the award further for any of several reasons, including the quantum of success achieved in the litigation. <u>Coutin</u> v. <u>Young & Rubicam P.R., Inc.</u>, 124 F.3d 331, 337 n.3 (1st Cir. 1997).

The magistrate judge employed this method in determining the appropriate fee award. The judge made several reductions from the reasonable hours expended on the litigation, including time accrued prior to the preparation of the Bogans' federal complaint in December 2001, and time spent on claims dismissed at summary judgment that were severable from the successful § 1983 claim. The judge also reduced the billing rate of one of the Bogans' attorneys, Harold Jacobi, from $350 to $300. After accounting for these reductions, the judge calculated a lodestar figure -- not including fees incurred after the Bogans rejected the defendants' Rule 68 offer of judgment, <u>see</u> <u>infra</u>, -- of $26,529.74. The judge

-14-

then reduced this figure by fifty percent because much of the trial focused on the unsuccessful claims against Joyce, and the ultimate damage award on the § 1983 claim was modest. After all reductions, the judge determined that an award of $13,264.87 in pre-offer fees was reasonable.

The magistrate judge then considered the Bogans' request for $13,389.33 in costs. As with the award of pre-offer attorney's fees, the judge excluded costs incurred prior to the preparation of the federal complaint and costs related to the unsuccessful severable claims dismissed at summary judgment. The judge also cut otherwise collectable research costs in half in the absence of sufficient information to determine whether these costs were incurred for research related to the successful claims. After making these reductions, the judge calculated that the Bogans were entitled to pre-offer costs of $3,694.84.

Having concluded that the Bogans were entitled to a total award of $16,959.71 in pre-offer fees and costs, the magistrate judge considered whether the Bogans were entitled to recover post-offer fees and costs. The judge observed that, under Rule 68, a prevailing party may not receive fees and costs incurred after receiving an offer of judgment, if the judgment finally obtained is worth less than the offer. The judge further observed that, to determine the size of the judgment finally obtained, the court must add the jury verdict to the amount of pre-offer fees and costs

-15-

awarded. Because the jury verdict of $30,000 plus the pre-offer fees and costs award of $16,959.71 was less than the City's $50,000 offer of judgment, the judge determined that the Bogans were not entitled to an award of post-offer fees and costs.

A fee award will be upheld unless it constitutes a "manifest abuse of discretion." See Richardson v. Miller, 279 F.3d 1, 2-3 (1st Cir. 2002). The trial court has "extremely broad" discretion in fashioning a fee award. Lipsett, 975 F.2d at 937. "Because this is so, and because the determination of the extent of a reasonable fee necessarily involves a series of judgment calls, an appellate court is far more likely to defer to the trial court in reviewing fee computations than in many other situations." Id.

The Bogans first claim that the magistrate judge abused her discretion by excluding all fees incurred prior to the preparation of their federal complaint in December 2001. From March 1999 through December 2001, the Bogans' counsel litigated the City's conduct in the Massachusetts Housing Court and before the Massachusetts Building Code Appeals Board. The Bogans contend that the time spent litigating before these state tribunals was recoverable under 42 U.S.C. § 1988 because the state proceedings permitted the Bogans to mitigate the damages available to them in their subsequent § 1983 action.

Section 1988 provides that attorney's fees may be awarded "in any action or proceeding to enforce provisions of §

-16-

1983." However, fees incurred in proceedings prior to the preparation of the § 1983 complaint are not recoverable, unless the pre-preparation time was "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached." Webb v. Bd. of Educ., 471 U.S. 234, 243 (1985). Under this standard, fees incurred in ancillary state proceedings that are necessary to pursue a federal civil rights action are recoverable, e.g., N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 71 (1980); Exeter-West Greenwich Reg. Sch. Dist. v. Pontarelli, 788 F.2d 47, 51 (1st Cir. 1986), while fees incurred during proceedings that are unnecessary for bringing the federal action are not, Webb, 471 U.S. at 241.[8]

The Bogans were not required to pursue remedies in the Massachusetts Housing Court or before the Massachusetts Building Code Appeals Board to proceed against the City under § 1983. Section 1983 contains no exhaustion requirement, and thus the Bogans' federal claim ripened immediately following the City's

---

[8]Sometimes a court may grant a partial award for work done during an ancillary proceeding where a discrete portion of the work was both useful and of a type ordinarily necessary to advance the § 1983 claim. E.g., Keenan v. City of Philadelphia, 983 F.2d 459, 474 (3d Cir. 1992) (allowing fees where product of discovery in ancillary proceeding was later used in federal action). The Bogans have not attempted to identify a discrete portion of fees incurred during the ancillary proceedings that were useful and necessary to the § 1983 action. Rather, they seek an award of all fees incurred during the ancillary proceedings. See Webb, 471 U.S. at 241 (denying the award of all fees incurred during pre-suit administrative proceeding where the plaintiff argued only that all time spent should be included in the § 1988 award).

wrongful conduct.  See Patsy v. Fla. Bd. of Regents, 457 U.S. 496 1982).  The results obtained by the Bogans in these state proceedings may have reduced their actual damages, thereby mitigating the damages available to them in the subsequent § 1983 action.  See Meyers v. City of Cincinnati, 14 F.3d 1115, 1119 (6th Cir. 1994) (stating that a plaintiff has a duty under § 1983 to mitigate damages).  But commencing these proceedings was not necessary to bringing their § 1983 claim.  If ancillary state proceedings brought to mitigate damages in an eventual § 1983 suit were sufficient to bring all fees incurred in those proceedings within the ambit of § 1988, the limitation established by Webb would be virtually meaningless.  After all, most ancillary proceedings to obtain relief from the alleged wrong underlying a § 1983 suit will, if successful, mitigate the damages flowing from that wrong.

Indeed, Webb itself involved a situation where the ancillary proceeding could have mitigated the damages available to the plaintiff in his subsequent § 1983 action.  The Webb plaintiff was terminated from his position as a school teacher and claimed that the dismissal was racially motivated.  471 U.S. at 236.  The plaintiff pursued administrative remedies before the local school board prior to commencing a § 1983 action in federal court.  Id. at 236-37.  If the plaintiff had been successful in obtaining relief through the administrative proceeding, his actual damages from the

termination would have been reduced.  The Court nevertheless held that the fees incurred during the administrative proceeding could not be recovered under § 1988.  Id. at 240.  The same rationale governs here.

The Bogans' second challenge to the fee award concerns the exclusion of time spent litigating claims dismissed at summary judgment which the magistrate judge determined were severable from the § 1983 claim.  The Bogans assert that this severability conclusion was an abuse of discretion because all claims arose from the same core of operative facts.

"[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved . . . and therefore no fee may be awarded for services on the unsuccessful claim."  Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). This rationale for discounting hours spent on unsuccessful claims does not apply, however, where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories.  Id.  This is so because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  Id.  Thus, fees are appropriately excluded from the lodestar only "when different claims for relief are not interconnected, that is, when the claims rest on different facts

and legal theories." Fiqueroa-Torres v. Toledo-Davila, 232 F.3d 270, 278 (1st Cir. 2000) (citing Coutin, 124 F.3d at 339).

The magistrate judge excluded time spent on the claims against the Mayor, the NDC, and Morrison premised on the theory that these defendants acted in concert to intimidate the Bogans by orchestrating the inspection to force them from the property. The salient facts underlying these claims related to the pre-inspection motives and conduct of these actors. In contrast, the award against the City was premised on inspection and post-inspection conduct. Thus, the unsuccessful claims excluded from the lodestar were predicated on facts different from those underlying the meritorious claim, and the magistrate judge did not abuse her discretion in excluding time spent on these unsuccessful claims.[9] See Fiquero-Torres, 232 F.3d at 278-79 (holding that fees incurred in litigating dismissed claims against a supervisor, who was not at scene of arrest, were severable from fees incurred litigating successful claim against the arresting officers).

The Bogans' final challenge to the lodestar calculation concerns the reduction of Jacobi's billing rate from $350 to $300. A "district court . . . is not bound by the hourly rate requested by the victor's counsel." Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 8 (1st Cir. 1993). A court may reduce an

---

[9]The Bogans have not claimed that any particular time entry was incorrectly identified as related to one of the severable, unsuccessful claims.

attorney's hourly rate based on the type of work that attorney performed during the litigation. See Miles v. Sampson, 675 F.2d 5, 9 (1st Cir. 1982). In this regard, we have affirmed a reduction in the billable rate of an attorney because the attorney, even though a "partner," assumed "the role of an associate" at the trial by performing less complex tasks. O'Rourke v. City of Providence, 235 F.3d 713, 737 (1st Cir. 2001). The magistrate judge reduced Jacobi's fee rate for similar reasons. Even though the Bogans established that a rate of $350 per hour was generally appropriate for an attorney at Jacobi's experience level, the magistrate judge concluded that a $50 reduction was appropriate because Jacobi had "limited involvement" in the case and "was not present at any time during the eight day trial." We have no basis for upsetting this assessment of Jacobi's participation nor for questioning the resulting modest reduction in his billing rate.

In addition to challenging the lodestar calculation, the Bogans object to the additional fifty percent reduction of the fee award based on their limited success at trial. They assert that the reduction for a lack of success was predicated on the same failed claims that the magistrate judge excluded from the lodestar, and therefore the magistrate judge impermissibly double counted the time spent on these failed claims.

This argument misunderstands the basis for the further reduction. This reduction was not, as the Bogans posit, to account

-21-

for the lack of success on the severable claims that were dismissed at summary judgment. The reduction was made to account for the time spent on the failed common law claims against Joyce, which were interconnected with the § 1983 claim (and therefore not excluded from the lodestar) and to reflect the relatively meager size of the jury verdict on the § 1983 claim. Consequently, the Bogans' argument that the magistrate judge twice reduced the fee award based on the severable claims that were dismissed at summary judgment is without merit.

This leaves the Bogans' more general claim that, aside from double counting, the fifty percent additional reduction was excessive. The Supreme Court has held that a reduction of a fee award beyond the lodestar may be appropriate where the plaintiff is unsuccessful on interrelated claims and ultimately obtains only limited success. See Hensley, 461 U.S. at 436; Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1191 (1st Cir. 1996) (holding that where "multiple claims are interrelated and a plaintiff has achieved only limited success . . . a court may . . . simply reduce the award to account for the limited success"). A trial court's determination to reduce a fee award to account for the plaintiff's limited success is entitled to "great deference." Diaz-Rivera v. Rivera-Rodriquez, 377 F.3d 119, 126 (1st Cir. 2004).

Much of our focus in reviewing a fee award is on assuring that the trial court provides an adequate explanation for its

-22-

actions.  See Wennik v. Polygram Group Dist., Inc., 304 F.3d 123, 134 (1st Cir. 2002); Coutin, 124 F.3d at 337.  Especially where, as here, a fee award is substantially reduced, the trial court is expected to provide a detailed explanation for its action.  See Rodriguez-Hernandez, 132 F.3d at 858.  The magistrate judge fulfilled this obligation; her careful order delineated in detail the reasons for the fifty percent reduction.[10]  Even were we inclined to be more generous "if writing on a pristine page," Diaz-Rivera, 377 F.3d at 127, the Bogans have not demonstrated an abuse of discretion in ordering a fifty percent reduction.[11]

---

[10]We reject the Bogans' argument that the magistrate judge did not adequately consider the societal importance of this litigation in making the fifty-percent reduction.  The Bogans contend that this litigation resulted in a change in official policy, but the record shows that this change took place before the federal action even commenced.

[11]The Bogans also raise three challenges to the reduction in their request for costs, which we deal with summarily.  First, they claim that costs incurred in the taking of a deposition of a trial witness, prior to the preparation of their federal complaint, was improperly excluded because the witness provided testimony at trial that was relevant to the § 1983 claim.  Without a trial transcript, we cannot ascertain the subject of the witness' testimony and therefore cannot disturb the exclusion.  Second, they contest the exclusion of costs related to the severable, unsuccessful claims dismissed at summary judgment.  For the reasons stated above concerning the exclusion of fees, there was also no abuse of discretion in excluding these costs.  Finally, they assert that it was an abuse of discretion to reduce research costs by fifty percent.  We have reviewed the billing submissions and conclude that there was no abuse of discretion in reducing these costs because the bills do not indicate whether the costs were incurred on research related to the successful claims.  See Parker v. Town of Swansea, 310 F. Supp. 2d 376, 400 (D. Mass. 2004).

The Bogans' last challenge to the award of fees and costs concerns the denial of all fees and costs incurred after the City made its Rule 68 offer of judgment. The parties correctly agree that, under Rule 68, a prevailing party is not permitted to recover fees or costs incurred after an offer of judgment, where the judgment finally obtained is less than the offer. City of Riverside v. Rivera, 477 U.S. 561, 580 (1986). They disagree, however, over the method for calculating the size of the judgment finally obtained. The Bogans contend that the judgment finally obtained includes the actual amount awarded by the jury ($30,000) and the amount of pre-offer attorney's fees and costs that they requested ($63,431.69). The City counters that the judgment finally obtained includes only the jury award and the pre-offer fees and costs actually awarded by the court ($16,959.71).

The cases support the City's position. Rule 68 provides, in relevant part, that a party defending against a claim may make an offer of judgment, which includes "costs then accrued." If the offer of judgment is rejected and "the judgment finally obtained" is less favorable than the offer, the offeree must pay costs incurred after the making of the offer. Fed. R. Civ. P. 68. The "judgment finally obtained" under Rule 68 includes the damage award plus pre-offer fees and costs actually awarded. See Scheeler v. Crane Co., 21 F.3d 791, 793 (8th Cir. 1994); Marryshow v. Flynn, 986 F.2d 689, 692 (4th Cir. 1993); Grosvenor v. Brienen, 801 F.2d

-24-

944, 948 (7th Cir. 1986).  The Fourth Circuit has cogently explained the rationale for this rule:

> Rule 68 requires that a comparison be made between an offer of judgment that includes 'costs then accrued' and the 'judgment finally obtained'. . . . To make a proper comparison between the offer of judgment and the judgment obtained when determining, for Rule 68 purposes, which is the more favorable, like 'judgments' must be evaluated.  Because the offer includes costs then accrued, to determine whether the judgment obtained is more favorable . . . the judgment must be defined on the same basis -- verdict plus costs incurred as of the time of the offer of judgment.

Marryshow, 986 F.2d at 692.

The Bogans' argument for crediting their request for pre-offer fees and costs, instead of the amount actually awarded by the court, is illogical.  If this were the rule, a prevailing party could always evade the Rule 68 bar simply by asking for a sufficiently large fee award so that the judgment finally obtained exceeds the offer.  Not surprisingly, there is no caselaw to this effect.  See Scheeler, 21 F.3d at 793 (concluding that amount of pre-offer fees and costs credited as part of the "judgment finally obtained" included the reasonable fees and costs awarded by the court); Marryshow, 986 F.2d at 692 (same).  We therefore conclude that, because the jury award plus the reasonable award of pre-offer fees and costs did not exceed the offer of judgment, the magistrate judge properly declined to award the Bogans post-offer fees and costs.

-25-

The Bogans challenged nearly all adverse aspects of this litigation, but, for the reasons discussed, their challenges lack merit. This litigation was ably managed by the district judge and the magistrate judge, from beginning to end.

**Affirmed**. Costs are awarded to appellees.