**ESSO STANDARD OIL COMPANY (Puerto Rico), Plaintiff**

v.

**Carlos W. LÓPEZ FREYTES, et al., Defendants.**

**Civil No. 03–2319 (CCC)(JA).**

United States District Court, D. Puerto Rico.

Sept. 18, 2008.

John F. Nevares, John F. Nevares & Assoc. PSC, San Juan, PR, PHV Lawrence P. Riff, PVH Jason Levin, Steptoe & Johnson LLP CA, Los Angeles, CA, for Plaintiff.

Edwin Quinones, Gary H. Montilla–Brogan, Quinones, Sanchez & Guzman, PSC, Hector R. Diaz–Gonzalez, Puerto Rico Environmental Quality Board, Maria L. Santiago–Ramos, Landron & Vera, Vivian Gonzalez–Mendez, Department of Justice, Edward W. Hill–Tollinche, San Juan, PR, Humberto Guzman–Rodriguez, Luis A. Rodriguez–Munoz, Landron & Vera LLP, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

JUSTO ARENAS, United States Chief Magistrate Judge.

This matter is before the court on motion by plaintiff Esso Standard Oil Company ("Esso") for an award of reasonable attorney's fees in the amount of $1,594,696.55 and expenses in the amount of $107,782.61 pursuant to 42 U.S.C. § 1988(b). (Docket Nos. 242 & 243.) Defendants filed an opposition alleging that Esso provided ambiguous and unclear supporting documents for its request for attorney's fees for services provided by the firms of Nevares & Associates, Latham & Watkins, and Steptoe & Johnson, but particularly Nevares & Associates (Docket No. 245, at 8–10), and that Esso "overstaffed" its case. (Docket No. 245, at 6.) Esso filed a reply to defendants' response in opposition on August 11, 2008. (Docket No. 246.)

Having considered the arguments of the parties and for the reasons set forth below, Esso's motion for attorney's fees is GRANTED.

## I. OVERVIEW

Beginning in 1979, Esso leased a set of underground fuel storage tanks at a service station in Barranquitas, Puerto Rico, and replaced the entire system in 1991. Between August 1998 and October 1999, the Puerto Rico Environmental Quality Board ("EQB") issued orders directing Esso to test the fuel storage system, said tests revealing that approximately 550 gallons of fuel had spilled from the system. *See Esso Standard Oil Co. v. López–Freytes,* 522 F.3d 136, 139 (1st Cir.2008); *Esso Standard Oil Co. v. Cotto,* 389 F.3d 212, 213–18 (1st Cir.2004). Despite Esso's efforts to comply with the EQB's directives, on May 21, 2001, the EQB proposed a $76 million fine against Esso. In September 2002, the EQB initiated hearings on the matter.

On March 3, 2004, Esso sought a preliminary injunction against the defendants on the grounds that the EQB proceedings were so constitutionally infirm that they violated Esso's due process rights. (Docket No. 13.) After this court abstained from hearing Esso's petition, *see ESSO Standard Oil Co. v. Mujica Cotto,* 327 F.Supp.2d 110 (D.P.R.2004) and Esso unsuccessfully filed an interlocutory appeal in both the Puerto Rico Court of Appeals and the Puerto Rico Supreme Court, Esso renewed its motion for a preliminary injunction with this court on February 4, 2005. (Docket No. 131.)

On November 7, 2006, this court concluded that there was structural bias due to the way in which the EQB administered its proceedings as well as actual bias due to the relationship between the EQB and the Puerto Rico Senate. (Docket No. 225.) Therefore, this court issued a permanent injunction against the EQB preventing it from continuing proceedings or imposing a fee against Esso. (Docket No. 226.)

On July 23, 2008, Esso moved the court for attorney's fees and expenses. (Docket Nos. 242 & 243.)

## II. DISCUSSION

"A prevailing party in a civil rights action normally is entitled to attorneys' fees incurred in the pursuit of fees under section 1988." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 340 (1st Cir. 2008) (citing *Brewster v. Dukakis,* 3 F.3d 488, 494 (1st Cir.1993); *Bond v. Stanton,* 630 F.2d 1231, 1235 (7th Cir.1980)). A party "prevails" on their claim " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)).

While defendants allege that Esso did not prevail "on every aspect of the present cause of action" (Docket No. 245, at 4), they fail to argue or allege exactly which aspects of the Esso's action were a failure. *See, e.g., Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992). Arguments made in such a perfunctory manner must be considered waived. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990), *cited in Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 295 n. 4 (1st Cir.2001). Esso sought and obtained a permanent injunction against the EQB on the precise grounds articulated in the amended complaint. The threshold redoubt is easily breached.

Once success on a claim crosses a party over the statutory threshold, it is for the district court to determine the "reasonableness" of the fees requested through

the so-called lodestar method. *Bogan v. City of Boston*, 489 F.3d 417, 426 (1st Cir.2007); *see also* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2675.1 (3d ed.2008). Under the lodestar method, a court begins with the attorney's contemporaneous billing records, subtracts duplicative, unproductive or excessive hours, and multiplies these remaining "reasonable" hours by the prevailing attorney rate in the community. *Bogan v. City of Boston*, 489 F.3d at 426.

 "[D]ocumentation provided must be full and specific, offering a description of both the time spent and the subject matter of the task performed." *R.I. Med. Soc'y v. Whitehouse*, 323 F.Supp.2d 283, 288 (D.R.I.2004) (citing *Tenn. Gas Pipeline Co. v. 104 Acres of Land, More or Less, In Providence County, State of R.I.*, 32 F.3d 632, 634 (1st Cir.1994)); *see also* 1 *Federal Civil Litigation In The First Circuit* § 8.7.1 (Hon. Robert B. Collings, et al., eds., 2003 Supp.). "The prevailing party has the burden of proving the reasonableness of the hours claimed." *Torres–Rivera v. O'Neill–Cancel*, 524 F.3d at 340 (citing *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. 1933). Judges reviewing fee requests are "to maintain a sense of overall proportion ... and not become enmeshed in meticulous analysis of every detailed facet of the processional representation[.]" *Boston & Maine Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir.1985) (citations and internal quotation marks omitted). The resulting "lodestar" amount may be adjusted for any of several reasons, including the quantum of success achieved in the litigation. *Bogan v. City of Boston*, 489 F.3d at 426 (citing *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 n. 3 (1st Cir.1997)).

 "[A]n out-of-town specialist may be able to command a higher rate for his services if the case requires specialized abilities not amply reflected among local lawyers, or 'when a specialist was required for the handling of the case and a smaller community does not have one available.'" *Vieques Conservation & Historical Trust, Inc. v. Martínez*, 313 F.Supp.2d 40, 46 (D.P.R.2004) (quoting *Maceira v. Pagán*, 698 F.2d 38, 40 (1st Cir.1983)). An out-of-town specialist may also collect such fees when a case is undesirable and capable attorneys within the forum are not willing to prosecute or defend. *R.I. Med. Soc'y v. Whitehouse*, 323 F.Supp.2d at 292 (quoting *Williams v. Poulos*, Nos. 94–2057 & 94–2058, 1995 WL 281451, at *4 (1st Cir. May 12, 1995)). "In ascertaining the rates to be awarded, the district court need not rely on information supplied by the parties, and remains free to utilize its own knowledge of attorneys' fees in the relevant area." *Rhode Island Medical Society v. Whitehouse*, 323 F.Supp.2d at 292 (citing *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1190 (1st Cir.1996); *Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 8 (1st Cir.1993)).

Defendants object neither to Esso's use of out-of-town specialists Steptoe & Johnson, and Latham & Watkins, nor to the hourly rates charged by any of the law firms Esso hired for this case. *See Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 26 (1st Cir.2004) (not reviewing attorneys' fees issues which were not objected to); *Tang v. State of R.I., Dep't of Elderly Affairs*, 163 F.3d 7, 13 n. 7 (1st Cir.1998) (same). Rather, the defendants protest the lack of detail in the supporting documentation, the amount of hours that may not be necessarily recoverable, the necessity of so much personnel to prosecute the case, and overstaffing in general.

A. Full & Specific Documentation

 Defendants allege that in "documents submitted by Nevares & Associates, plaintiff includes the timekeeper of four

attorneys. Yet the only rate specified is the leading attorney's rate." (Docket No. 245, at 8.) Documents provided by both Esso and Nevares & Associates clearly state that the junior attorneys were billed at $165 per hour. (Docket No. 243–4, at 3.) Additionally, the total amount billed per attorney was correctly calculated, with attorney Nevares being billed at $195 per hour and junior associates at $165 per hour. (Docket No. 243–4, at 3.)

Defendants allege that Nevares & Associates billed for time spent preparing for oral argument, but did not bill for time spent in actual oral argument. Because defendants give no more specificity to their allegation I assume they mean the entry "Preparation for, travel to Courthouse for attending to Oral Argument before First Circuit Court" filed by Xiomara Colón. (Docket No. 243–14, at 2.) There is no issue with this entry or such an entry generally: an associate may prepare documents for oral argument for other attorneys involved in the litigation without necessarily participating in the oral argument herself. *See Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir.1986).

Defendants allege that Nevares & Associates failed to specify what " 'prepare for preliminary injunction hearing' means among other things." (Docket No. 245, at 12.) The entry sets out not only the purpose of the time spent but also specifies which part of the litigation is being developed. *Tenn. Gas Pipeline Co. v. 104 Acres of Land, More or Less, In Providence County, State of R.I.*, 32 F.3d at 634; *cf. Gamma Audio & Video, Inc. v. Ean–Chea*, 11 F.3d 1106, 1118 (1st Cir.1993) (finding entries such as " 'Draft documents,' 'Work on Case,' 'Review of Discovery,' and 'study file, legal research re Mass. case[ ]' " too vague). This entry and the entries related to attorney's fees in general are neither gauzy nor hazy.

The same can be said of defendants' allegation that "on Docket 243–17 plaintiff uses general vocabulary as to the tasks without further information which may specify the type of work particularly on the temporary restraining order papers." (Docket No. 245, at 9.) Docket entry 243–17 contains the hours and description of work done by attorneys for Latham & Watkins. Not only do defendants not specify which entry of the thirty-nine (39) pages worth of entries they find vague, but a review of the entries shows they are sufficiently specific.

■ Defendants allege that Esso "[o]n Docket 243–18 ... includes both Paid hours which are supposed to be write offs and includes them in the total hours, thus creating confusion as to the paying party." (Docket No. 245, at 9.) Docket entry 243–18 contains records for hours worked by attorneys and staff at Latham & Watkins. Defendants object to the fact that while Esso's "summary of total hours" summarizes how many hours were written off (see Docket No. 243–4), which hours were written off are not detailed in Esso's timekeeper records. (See Docket No. 243–18.) However, there is only one Latham & Watkins staff member, paralegal Elisabeth Grippando, who has had her hours both written off and submitted for compensation. (See Docket No. 243–4, at 4.) While a party is required to make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[,]" *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. 1933, there is no requirement that a party deducting such hours identify which hours were deducted, or for which of the three reasons promulgated in *Hensley* such hours were deducted.

As to the documentation for reasonable expenses incurred in the prosecution of this case, the various expense items are

accompanied by attested statements, statements made under penalty of perjury, of Esso's attorneys of record. The defendants are clearly placed on notice as to the nature of each expense. Aside from generically, they have not attacked the items except perhaps certain meal expenses incurred during the years of this litigation. (Docket No. 243–5.)

### B. Overstaffing

Defendants argue Esso "overstaffed" its case with "33 attorneys, 11 paralegals (one of them being temporary), 6 Research Librarians, 1 Reference Librarian, 1 Summer Associate, 1 Senior Analyst, and 1 IT Specialist[.]" (Docket No. 245, at 6.) Steptoe & Johnson billed attorneys fees in the amount of $461,832.35 and expenses of $27,090.48. John F. Nevares & Associates, PSC billed fees in the amount of $150,114.00 and expenses of $3,557.20. Latham & Watkins, the workhorse of the plaintiff team, billed $982,750.20 and expenses of $64,604.22. Translations of Carlos M. Mangual López and Transperfect Translations billed expenses of $2,052.50 and $10,478.21 respectively. (Docket No. 243–2.) The fee requests are supported by contemporaneous billing statements which are supported by statements made under penalty of perjury pursuant to 28 U.S.C. § 1746 by attorneys Víctor Rodríguez, Jason Levin, Lawrence P. Riff, John F. Nevares, and John McGahren. (Docket No. 243.) *Cf. Bobe–Muñiz v. Caribbean Restaurants, Inc.*, 76 F.Supp.2d 171, 177–78 (D.P.R.1999). Defendants claim that said number poses questions as to the cost efficiency involved and best utilization of the judicial resources and should raise the question as to whether said amount of people and hours were really necessary in the pursuance of plaintiff's defense. Specifically, defendants argue further that Esso was overstaffed at oral argument because plaintiff's representation consisted of more than one attorney from the same law firm.

Esso seeks compensation for time billed for twenty-one (21) attorneys, five (5) paralegals and one (1) law clerk. (See Docket No. 243–4, at 2–4.) Not only was this case complex and hard fought, but defendants have provided no specific reason—aside from Esso's use of more than one attorney at oral argument—as to why Esso's staffing should be considered excessive. *See, e.g., Rodríguez–Hernández v. Miranda–Vélez*, 132 F.3d 848, 859 (1st Cir. 1998).

In *Hart v. Bourque* the First Circuit reduced the party's attorneys' fees where it was clear that the hours requested had been the product of duplicitous and redundant work:

> [T]urnover among Mr. Owens's associates, or, at least, transfers of duties, was highly extravagant from the standpoint of time. In the first place, backgrounds of familiarity would be lost. This inefficiency would be unobservable as it affected particular jobs, but it even resulted in specific charges. Thus, when one new attorney early on had to write a short review of the status of the case, she charged 5.75 hours. A later replacement charged for "reviewing files," 10.5 hours. Ultimately, another replacement charged 23 hours for reviewing files. At $80 an hour, that alone would be $1,840. This was an office defect, not chargeable to defendants.

*Hart v. Bourque*, 798 F.2d at 522–23. The First Circuit emphasized that "[u]nder these circumstances the real test cannot be the number of hours logged, but what was done." *Id.* at 523.

Defendants have not alleged that any of the hours requested by Esso are redundant although they do mention that plaintiffs want to recover more than 4,200 billing hours that clearly may not necessarily be recoverable. (Docket No. 245, at 7.) A review of the record shows that nearly

70% of the time sought by Latham & Watkins was spent by 40% of its time keepers (Senior Partner James Tyrell, Of Counsel Julio Gómez and Associate Attorneys Matthew Roskoski and Jopseph Hopkins), and over 68% of the time sought by Steptoe & Johnson was billed by 38% of its attorneys (Partners Shannen Coffin, Lawrence Riff and Jason Levin, Of Counsel Alice Loughran and Associate Attorney Patricia Paredes). (See Docket No. 243–4, at 2 & 4.) Although not controlling here, other courts have held that a case is not overstaffed when a minority of attorneys bill a majority of the work. *See Auto. Products PLC v. Tilton Eng'g, Inc.,* 855 F.Supp. 1101, 1103 (C.D.Cal.1994). Such reasoning is persuasive and given the procedural history and complexity of this case, the ferocity with which it was litigated, and the high stakes involved, I find Esso's staffing to be reasonable.

Defendants allege Esso overstaffed its case at oral argument by having more than one attorney at the table. While it is true that "[a]s a general matter, the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted[,]" *Lipsett v. Blanco,* 975 F.2d at 938 (internal quotation marks omitted) (citing *Hart v. Bourque,* 798 F.2d at 523), this does not create a per se rule against more than one attorney at oral argument. Furthermore, this is not a case "of irresponsible litigation strategy, minimal accomplishment and intolerable over claiming which merits denial of any fee whatsoever to a prevailing party." *See Poy v. Boutselis,* 352 F.3d 479, 490 (1st Cir.2003). Appellate practice is perhaps more stressful than trial work and whereas success may be measured in hours and days at trial, it is measured in minutes at oral argument.

In *Lipsett v. Blanco* the First Circuit agreed with the district court's assessment that the presence of multiple lawyers and

a paralegal at trial "was desirable due to the complex nature of the case and the reams of evidence which needed to be tracked and analyzed." *Lipsett v. Blanco,* 975 F.2d at 938. The court noted that:

> [The] case was bitterly contested. Appellants mounted a Stalingrad defense, resisting Lipsett at every turn and forcing her to win her hard-earned victory from rock to rock and from tree to tree. Since a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance.

*Id.* at 939.

The present case, much like *Lipsett v. Blanco,* was complex and hard fought with defendants vehemently opposing almost every motion filed by Esso. In the litigious fabric of this case, the presence of an additional plaintiff attorney adds no material to defendant's protest. When one considers the amount of the fine ultimately at stake with the amount of the fees generated in avoidance of such a fine, the efforts of Esso are clearly not disproportionate to the ultimate outcome. *Cf. Domegan v. Ponte,* 972 F.2d 401, 421 (1st Cir.1992), *vacated & remanded in view of Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

## V. CONCLUSION

Reasonableness is the linchpin of any consideration of a motion for attorney's fees. The EQB's opposition to the motion for attorneys fees and expenses requests that the motion be denied, but that if the court is inclined to award legal fees and expenses, the same should be reduced by no less than 50% of the total amount given the absence of sufficient specificity to properly address the amount petitioned for. (Docket No. 245, at 11.) This alternative suggestion possesses the semblance

of wholesale Solomon-like ritual rather than the lodestar formula. *See* I Kings 3:16–28. The alternative solution is declined.

In view of the above I find defendants have shown neither that Esso's supporting documents are ambiguous and unclear, nor that Esso overstaffed its case. Therefore, Esso's motion for attorneys' fees is GRANTED. Attorney's fees are awarded in the amount of $1,594,696.55 and expenses are awarded in the amount of $107,782.61.