In re Kevin W. LITTLE and Melissa A Little, a/k/a Melissa A. Boudreau, Debtors.

Philip M. Stone, Esq., Appellant.

BAP No. MW 12–029.
Bankruptcy No. 10–45408–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

Jan. 4, 2013.

Philip M. Stone, Esq., Worcester, MA, on brief for Appellant.

Denise M. Pappalardo, Chapter 13 Trustee, on brief as amicus curiae.

Before HAINES, DEASY, and TESTER, United States Bankruptcy Appellate Panel Judges.

**508**

HAINES, Bankruptcy Judge.

Attorney Philip M. Stone appeals the bankruptcy court's order limiting the fees to be allowed in connection with his representation of chapter 13 [1] debtors, Kevin W. Little and Melissa A. Little. We **AFFIRM.**

### BACKGROUND

The Littles hired Stone to represent them in bankruptcy. They agreed to pay him $2,500.00 for preparing and filing their petition, schedules, statements, and a chapter 13 plan. The parties agreed that additional services would be billed at Stone's hourly rate.

Stone filed the Littles' chapter 13 petition and, in due course, he filed their schedules, statement of financial affairs, and plan. The Littles' submissions established that they were above median income debtors as defined by § 101(39A). They disclosed a number of questionable (and substantial) expenses. As the case progressed, they twice filed amended schedules reducing those expenses.

The Littles' initial plan proposed payments of $35.00 for 60 months, providing a 1 percent dividend to unsecured creditors. Additional, unpaid legal fees of $900.00 were to be fully paid through the plan. The trustee objected, arguing that the Littles were not providing all of their projected disposable income to fund the plan as required by § 1325(b)(1)(B), and that they were not proceeding in good faith as required by §§ 1325(a)(3) and (7). The bottom line showed that, although together the Littles earned more than $111,000.00 per year, they were proposing to fund the plan at only $35.00 a month. The court sustained the objection, and ordered them to amend their plan.

The Littles' first amended plan set monthly payments at $860.00 for 60 months, providing a 44 percent dividend to unsecured creditors. But, this time, M & T Bank objected to the cramdown of its secured claim (an auto loan).[2] So, the Littles filed a second amended plan, resolving the M & T Bank objection, and calling for monthly payments of $860.00 for 60 months. The plan yielded a 47 percent dividend to unsecured creditors. In this incarnation, the plan also proposed to pay Stone's legal fees, estimated to be $6,000.00, subject to application and allowance. The second amended plan was confirmed.

Stone filed his fee application, seeking fees and costs in the total amount of $9,102.10.[3] That sum included his prefiling retainer of $2,500.00, over $4,000.00 for additional services, and more than $1,700.00 for preparing the fee application. After crediting payments of $3,474.00 (directly from the Littles and via the confirmed plan), he asked that the remaining balance of $5,628.10 be paid through the plan as an administrative expense. Neither the trustee nor any party-in-interest objected.

The court convened a total of three

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*

2. Although the initial plan contained the same cramdown provision with respect to M & T

Bank's claim, it did not object until the Littles filed their first amended plan.

3. In Massachusetts, an attorney seeking to collect administrative fees of more than $3,500.00 for pre-confirmation services, or more than $500.00 for post-confirmation services, must file a fee application. MLBR Appendix 13–7(b)

hearings to address Stone's application.[4] It noted that Stone's fees were significantly higher than a typical fee for an uncomplicated chapter 13 case. Stone rejoined that the fees resulted from extensive communications with the trustee's counsel regarding the Littles' allowable expenses, and from preparation and filing of amended schedules and plans. The court characterized much of Stone's work as "meritless." In its view, had Stone appropriately limited the Littles' expenses to those which above median income debtors could lawfully claim, then a plan calling for devotion of the proper projected disposable income could have been prosecuted to confirmation straightforwardly, at far more modest cost. Thus, the court allowed Stone's fees in the reduced amount of $3,982.10 ($3,500.00 in fees; $482.10 in expenses).

This appeal ensued.

## JURISDICTION

Before addressing the merits of an appeal, we must determine that we have jurisdiction. *See Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.),* 226 B.R. 724 (1st Cir. BAP 1998). We are empowered to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (internal quotations and citations omitted), whereas an interlocutory order " 'only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken

in order to enable the court to adjudicate the cause on the merits.' " *Id.* (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)).

The order before us finally adjudicated the attorneys' fees and costs to be paid to Stone through the Littles' confirmed plan. *See Torres Lopez v. Consejo de Titulares del Condominio Carolina Court Apts. (In re Torres Lopez),* 405 B.R. 24, 30–31 (1st Cir. BAP 2009). Thus, we have jurisdiction.

## STANDARD OF REVIEW

We review a bankruptcy court's quantification of fees for abuse of discretion. *Berliner v. Pappalardo (In re Sullivan),* 674 F.3d 65, 68 (1st Cir.2012) (citing *Casco N. Bank, N.A. v. DN Assocs. (In re DN Assocs.),* 3 F.3d 512, 515 (1st Cir. 1993)).

In reviewing fee awards, great deference is granted to the trial court judge, "whose intimate knowledge of the nuances of the underlying case uniquely positions him to construct a condign award." *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 292 (1st Cir. 2001). Because the determination of a reasonable fee "necessarily involves a series of judgment calls," the trial court has "extremely broad" discretion in determining an award, and "an appellate court is far more likely to defer to the trial court in reviewing fee computations than in many other situations." *Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir. 1992); *see also Bogan v. City of Boston,* 489 F.3d 417, 427 (1st Cir.2007).

*In re Torres Lopez,* 405 B.R. at 30. A fee award will be set aside " '... only if it clearly appears that the trial court ignored

---

**4.** The initial hearing convened on February 21, 2012, and two additional hearings were held on April 24, 2012, and May 21, 2012.

a factor deserving significant weight, relied upon an improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them.'" *In re Sullivan,* 674 F.3d at 68 (quoting *Gay Officers Action League,* 247 F.3d at 292–93).

## DISCUSSION

### I. The Standard for Compensation in Chapter 13 Cases

Section 330 governs the allowance of compensation for professional services in bankruptcy proceedings. With respect to chapter 13 cases, § 330(a)(4)(B) specifically provides:

> In a ... chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). And, with respect to compensation under any chapter, § 330 further requires the court to consider "the nature, the extent, and the value of such services, taking into account all relevant factors." 11 U.S.C. § 330(a)(3). These factors include:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)–(F).

Bankruptcy courts have express statutory authority to award professional compensation in an amount less than the amount requested, even in the absence of an objection by a party in interest. 11 U.S.C. § 330(a)(2) ("The [bankruptcy] court may, on its own motion ... award compensation that is less than the amount of compensation that is requested."); *see also Law Offices of David A. Boone v. Derham–Burk (In re Eliapo),* 468 F.3d 592, 597 (9th Cir.2006); *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 841 (3d Cir.1994). The burden of proof is on the party requesting the compensation award. *Berliner v. Pappalardo (In re Sullivan),* 454 B.R. 1, 5 (D.Mass.2011), *aff'd,* 674 F.3d 65 (1st Cir.2012); *see also Garb v. Marshall (In re Narragansett Clothing Co.),* 210 B.R. 493, 498 (1st Cir. BAP 1997) (citing *Woods v. City Nat'l Bank & Trust Co. of Chicago,* 312 U.S. 262, 269, 61 S.Ct. 493, 85 L.Ed. 820 (1941) ("[T]he claimant ... has the burden of proving their worth.")).

We employ the "lodestar" approach as a device helpful in determining reasonable attorneys' fees. *See In re Sullivan,* 674 F.3d at 69; *In re Torres Lopez,* 405 B.R. at 32 (the calculation of a so-called "lodestar" is the "critical first step"); *In re Claudio,* 459 B.R. 500, 511 (Bankr. D.Mass.2011).

The lodestar method entails multiplying the number of hours productively spent

by a reasonable hourly rate. In determining the number of hours productively spent, courts should "eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case." Courts determine reasonable hourly rates based on the nature of the work, the locality where it was performed, the lawyer's qualifications, and other pertinent criteria.

*In re Torres Lopez,* 405 B.R. at 30 (citations omitted). After calculating this amount, "the court may adjust it, up or down, in light of other considerations." *Id.* (citation omitted); *see also In re Claudio,* 459 B.R. at 512 (citing *In re LaFrance,* 311 B.R. 1, 20 (Bankr.D.Mass. 2004)). If the time expended appears duplicative, excessive, or otherwise unnecessary, the lodestar should be reduced accordingly. *McMullen v. Schultz,* 428 B.R. 4, 11 (D.Mass.2010). The court need not follow a rigid prescription when reducing fees; it may either eliminate specific hours or reduce the overall fee award to a reasonable amount. *In re Torres Lopez,* 405 B.R. at 31; *see also In re Sullivan,* 674 F.3d at 69, 70 ("[T]he lodestar method ... is designed to provide[ ] a flexible paradigm not meant to bind the ... court to any single way of calculating the number of hours reasonably expended," and "[a] bankruptcy court's explanation of its fee award need not proceed line by line through the fee application.") (internal quotations and citations omitted).

## II. Applying the Standard

■ Stone sought allowance of attorneys' fees in excess of $9,000.00 for what the court considered a mill-run chapter 13 case. Although the court did not consider Stone's rates excessive, it determined that many of the hours he devoted to the case were unnecessary and reduced his fee accordingly. On the record before us, we cannot conclude that the bankruptcy court's decision to reduce the fee award was an abuse of discretion.

Stone admitted that he filed an original Schedule J containing impermissibly generous expenses, and that he incorporated those expenses to propose an initial plan, which he knew could not be confirmed over objection. He indulged in time-consuming (and, in the court's view, pointless) negotiations regarding the Littles' expenses.

■ Stone considers that the Massachusetts fee formula reflects a parsimonious policy toward professional fees. And he urges that the bankruptcy court's concerns regarding the projected disposable income formula's inflexibility are mistaken, leading it to conclude that there is no room for negotiation. Whether Stone's points are well taken or not, they are beside the point. Those issues are not before us. We are, instead, concerned with the travel of *this* case. Whether Stone could expect compensation for prosecuting confirmation of a chapter 13 plan that *reasonably or necessarily* departed from a rigid, formulaic disposable income calculation to accommodate exigencies attendant his clients' circumstances is not the question. That is not what he did. The court rationally concluded that Stone's starting point was not a function of real world concerns for the plan's practicality; rather, it was an unrealistic indulgence of the Littles' predispositions toward work and entertainment. Moreover, although an attorney is entitled to a fee award including the time reasonably spent preparing his fee application, he should responsibly delegate tasks and employ clerical support to limit the expense of application preparation. *See* 11 U.S.C. § 330(a)(6) ("Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application."). It does not appear that was done here.

### CONCLUSION

The bankruptcy court did not abuse its discretion in reducing the total award from $9,102.10 to $3,982.10 ($3,500.00 for attorneys' fees and $482.10 in expenses). We **AFFIRM**.